COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| WEST TEXAS EXPRESS d/b/a ROBERTS' TRANSPORTATION, INC., | § | |
| | § | No. 08-12-00307-CV |
| Appellant, | § | Appeal from the |
| v. | § | County Court at Law No. 6 |
| PEDRO GUERRERO, | § | of El Paso County, Texas |
| Appellee. | § | (TC#2011DCV01329) |

## O P I N I O N

In this non-subscriber negligence case, West Texas Express d/b/a Roberts' Transportation, Inc. (hereinafter, "WTE") appeals the trial court's order denying its motion to compel arbitration and to stay the proceedings pending arbitration. In two issues, WTE argues the trial court erred in concluding: (1) the Federal Arbitration Act (hereinafter, "FAA") did not apply to the arbitration agreement in issue; and (2) the agreement was invalid and unenforceable. We reverse and remand to the trial court for further proceedings.

### FACTUAL AND PROCEDURAL BACKGROUND

Pedro Guerrero was employed as a truck driver by WTE. While working for WTE, Guerrero was injured when his 18-wheeler was struck by another 18-wheeler. WTE is a non-subscriber under the Texas Workers' Compensation Act (hereinafter, "TWCA") and did not

carry workers' compensation insurance. Instead, it voluntarily established a self-funded

Occupational Injury Benefit Plan (hereinafter, "Plan") to "provide[] benefits for Participants who

sustain certain accidental on-the-job injuries." The Plan contains the following provision:

> 3.4 Mutual Arbitration of Disputes. Under the Plan, a Participant agrees that all types of disputes or differences arising out of or relating to a Participant's injury, between the Participant and the Company during or following the Participant's employment with the Company, that cannot first be resolved through an internal review process and, if necessary, through mediation, are subject to final and binding arbitration. A Participant waives, releases, and gives up any rights that the Participant has to sue in court and to have a jury determine a dispute for claims including, but not limited to (i) application and interpretation of the Arbitration Agreement (attached hereto as Exhibit 'A' and made a part hereof for all purposes), and breach thereof; and (ii) any potential action as to the Company's negligent cause of a Participant's work-related injury. All claims and disputes that a Participant . . . has or may have in the future against the Company and/or its subsidiaries, successors, officers, directors, shareholders, employees or agents, and all of these persons' and entities' claims and disputes against the Participant are subject to binding arbitration under the terms specified in Exhibit 'A.'

Exhibit "A" to the Plan is a document entitled "ARBITRATION AGREEMENT." By signing

the agreement, the employee acknowledges receipt of and an opportunity to read and review the

Summary Plan Description (hereinafter, "SPD") of the Plan and to ask questions regarding the

Plan. The agreement states in pertinent part:

> I also understand that the Plan includes provisions for mutual arbitration of disputes between [WTE] and its employees.

> .        .        .

> In execution of this Arbitration Agreement . . . under the [Plan], I agree that all claims or controversies arising out of or relating to an injury sustained by me during the course and scope of employment with [WTE] that cannot first be resolved through an internal review process and, if necessary, through mediation are subject to final and binding arbitration.

> .        .        .

2

**I acknowledge and understand that by executing this Agreement, I am giving up my right to a jury trial on all of the claims covered by this Agreement and that the decision of the arbitrators selected hereunder shall be final and binding on both parties.**

The Arbitration Procedures set forth in the [SPD] (and also in Section Seven of the Plan) are incorporated by reference into, and made part of, this Agreement the same as if they were set forth in this Agreement at length and in full. This Agreement, combined with the incorporated Arbitration Procedures set forth in the [SPD] description, is the complete agreement between [WTE] and me on the subject of arbitration of these types of disputes. . . . Both [WTE] and I agree that this Agreement binds and benefits our successors, subsidiaries, affiliates, assigns, beneficiaries, heirs, children, spouses, parents and legal representatives.

This Agreement to arbitrate shall survive the termination of my employment with [WTE]. It may only be revoked or modified by mutual consent evidenced by a writing signed by both [WTE]'s authorized representative and me, and which specifically states an intent to revoke or modify this Agreement. [Emphasis in orig.].

Although Guerrero signed the arbitration agreement and received benefits under the Plan, he sued WTE for negligence. Contending that Guerrero had agreed to—and enrolled in—the Plan, WTE moved to compel Guerrero to submit his claim to arbitration and to stay the proceedings pending the outcome of arbitration.

Guerrero countered that, for several reasons, his suit should not proceed to arbitration. Most notably, he argued the agreement was unenforceable because it was part of an employment contract of a transportation worker exempt from arbitration under Section 1 of the FAA. Guerrero also argued the arbitration agreement was void pursuant to Section 406.033(e) of the Texas Labor Code. Further, Guerrero claimed the arbitration agreement was invalid because: (1) it was not supported by consideration; (2) it was illusory; (3) it was substantively and/or procedurally unconscionable; and (4) he was fraudulently induced to sign it. Lastly, Guerrero

3

contended the arbitration agreement was void because Congress never intended the FAA to preempt the TWCA and because, as applied, the FAA violates the Tenth Amendment to the U.S. Constitution.

The trial court held a hearing on the motion and, after taking the matter under advisement, denied the motion without specifying the basis for its ruling.

## STANDARD OF REVIEW

We review the trial court's denial of a motion to compel arbitration for an abuse of discretion. *See In re Labatt Food Svc.*, *L.P.*, 279 S.W.3d 640, 643 (Tex. 2009)(orig. proceeding). Under this standard, we defer to the trial court's factual determinations that are supported by the record and review legal questions *de novo*. *Id*.

A party seeking to compel arbitration must establish the existence of a valid arbitration agreement, and show that the claims asserted fall within the scope of the arbitration agreement. *In re Dillard Dept. Stores, Inc.*, 186 S.W.3d 514, 515 (Tex. 2006)(orig. proceeding). If that party succeeds in so establishing and showing, the burden shifts to the party opposing arbitration to prove any alleged defenses to arbitration. *In re AdvancePCS Health, L.P.*, 172 S.W.3d 603, 607 (Tex. 2005)(orig. proceeding). If the opposing party fails to so prove, the trial court has no discretion but to compel arbitration. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753-54 (Tex. 2001)(orig. proceeding). Because a presumption exists in favor of arbitration, courts must resolve any doubt about an arbitration agreement's existence or scope in favor of arbitration. *Id*. at 753.

## APPLICABILITY OF THE FAA

4

In its first issue, WTE argues the trial court abused its discretion in denying the motion to compel arbitration because the arbitration agreement is subject to the FAA and not exempt from arbitration under Section 1 of the FAA as an employment contract of a transportation worker. We agree.

### *Applicable Law*

The FAA provides, in relevant part, that:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C.A. § 2 (West 2009). The FAA, however, exempts "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce" from its coverage. 9 U.S.C.A. § 1. Employment contracts of transportation workers "actually engaged in the movement of goods in interstate commerce" fall within the exemption provided by Section 1 of the FAA. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 112, 121 S.Ct. 1302, 1307, 149 L.Ed.2d 234 (2001). Thus, truck drivers, such as Guerrero, are considered transportation workers within the meaning of Section 1 of the FAA. *In re Swift Transp. Co., Inc.*, 311 S.W.3d 484, 488-89 (Tex.App.--El Paso 2009, orig. proceeding).

For purposes of Section 1 of the FAA, a "contract of employment" is a "contract between an employer and an employee in which the terms and conditions of employment are stated." *In re Swift*, 311 S.W.3d at 489. An occupational injury benefit plan is a "contract of employment" within the meaning of Section 1 of the FAA if it is "a mandatory company policy and it includes an arbitration provision." *Id*. at 490.

*Discussion*

WTE's Plan is not a contract of employment within the meaning of Section 1 of the FAA. Guerrero contends the Plan is a contract of employment because Section 643.106 of the Texas Transportation Code requires WTE "to maintain [the Plan] in lieu of its decision to be a non-subscriber under Texas law." In other words, Guerrero claims the Plan is a mandatory company policy because the "benefits were required under [Section 643.106]." However, Section 643.106 does not impose such a requirement.

Section 643.106 requires an employer, such as WTE, to "protect its employees by obtaining: (1) workers' compensation insurance coverage as defined under Subtitle A, Title 5, Labor Code; or (2) accidental insurance coverage [from an approved insurance carrier]." TEX.TRANSP.CODE ANN. § 643.106(a)(West 2011). "By its own terms, [Section 643.106] allows an employer to chose not to carry insurance coverage under the TWCA[,] . . . [and] compliance with the TWCA requires merely choosing between workers' compensation coverage and accidental insurance coverage." *Rojas v. DAJ Enters., Inc.*, No. EP-00-CA-313-DB, 2001 WL 682223, *3 (W.D. Tex. Mar. 6, 2001)(mem. op.)(rejecting alternative argument that, even if accidental insurance was purchased solely for the purpose of complying with the TWCA—not Section 643.106—the insurance plan did not fall under a safe-harbor provision exempting it from ERISA pre-emption because employer had opted out of the workers' compensation scheme by adopting its own self-funded plan). Thus, under the statute's plain language, an employer is required to provide insurance coverage but is not required to subscribe to workers' compensation insurance to meet that obligation.

Given that Section 643.106 does not require an employer to provide worker's compensation insurance coverage in the first place, we cannot conclude the statute requires WTE to maintain a self-funded occupational benefit plan as a substitute for worker's compensation insurance coverage.[1]   Futher, neither party contends "the Plan is the same as the insurance described in the statute," and we do not hold that it is, we cannot conclude the benefits provided by the Plan are equivalent to the insurance required by Section 643.106.[2]   Accordingly, the trial court abused its discretion in denying WTE's motion to stay pending arbitration on the basis that, pursuant to Section 643.106, the Plan is a contract of employment within the meaning of Section 1 of the FAA.

WTE's first issue is sustained.

## VALIDITY AND ENFORCEABILITY OF THE ARBITRATION AGREEMENT

In its second and final issue, WTE contends the arbitration agreement is an enforceable contract the scope of which encompasses Guerrero's negligence claim.   Therefore, WTE insists that the trial court abused its discretion by declining to order the parties to arbitration.   We agree.

### General Principles of Contract Law

Chief among the various reasons asserted by Guerrero why the arbitration agreement is unenforceable as a matter of law is his assertion that the agreement is invalid under general

---

[1] There is no indication in the record that, at the time of Guerrero's injury, WTE had in force accidental insurance coverage for its employees in lieu of workers' compensation insurance.

[2] Indeed, as framed by Guerrero, "the issue for the trial court (and this Court) is not whether 'the Plan is the same as the insurance described in the statute,' but whether the *benefits provided in the Plan* are required under the Texas Transportation Code."   [Emphasis in orig.].

7

principles of contract law.[3]  When determining the validity of an arbitration agreement that is subject to the FAA, we apply state law principles that govern the formation of contracts.  *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227-28 (Tex. 2003).

## A.  Illusory

Guerrero argued that the arbitration agreement is illusory because WTE was given the unilateral right—under *the Plan*—to terminate *the Plan*, "including the arbitration provision contained therein[.]"  Specifically, Guerrero directs us to the following language in the Plan:

> 9.2    Term of Plan.  This Plan may be terminated by the Company at any time, provided that the Company has sent each Participant written notice of its intention to terminate at least thirty days prior to such termination date.  In the event of (i) any changes in applicable law or regulations, or (ii) judicial decisions, that the Company determines in its sole discretion adversely affects the purpose of this Plan, the Company may in its sole discretion without notice to any Participant terminate this Plan.

However, "an arbitration clause is not illusory unless one party can avoid its promise to arbitrate by amending the provision or terminating it altogether."  *In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 424 (Tex. 2010).  Here, Guerrero does not point to any language *in the arbitration agreement* demonstrating that WTE can avoid its promise to arbitrate by unilaterally amending the agreement or terminating it altogether.  Indeed, there is no such language.  The arbitration agreement makes clear that "[i]t may only be revoked or modified by mutual consent evidenced by a writing signed by both [WTE]'s authorized representative and [Guerrero], and which specifically

---

[3] Guerrero also argues that, since the FAA does not apply to the arbitration agreement, the agreement is void under Section 171.002 of the Texas Arbitration Act because it is not signed by each party and each party's attorney.  Our conclusion that the FAA applies to the arbitration agreement renders this argument moot.

8

states an intent to revoke or modify this Agreement." Accordingly, Guerrero has failed to prove that the arbitration agreement is illusory.

## B. Consideration

Guerrero contends that the Plan is not supported by valid consideration. Like other contracts, arbitration agreements must be supported by valid consideration. *In re Palm Harbor Homes*, 195 S.W.3d at 676. Consideration may take the form of mutual promises to submit a dispute to arbitration. *In re 24R, Inc.*, 324 S.W.3d 564, 566 (Tex. 2010). Here, both Guerrero and WTE promised to submit their claims and disputes to binding arbitration, as evidenced by the following provision in the Plan: "All claims and disputes that a Participant . . . has or may have in the future against the Company and/or its subsidiaries, successors, officers, directors, shareholders, employees or agents, and all of these persons' and entities' claims and disputes against the Participant are subject to binding arbitration under the terms specified in [the Arbitration Agreement]."

At trial, Guerrero asserted that the Plan was not supported by valid consideration "because the Plan did not impose any new obligations on [WTE] that it was not already required to provide . . . [him], under [Section 643.106 of the Texas Transportation Code]." However, as was discussed above, Section 643.106 does not require WTE to provide its employees with benefits under the Plan.

On appeal, Guerrero advances a different argument in support of his assertion that the arbitration agreement fails for lack of consideration. He contends that the arbitration agreement is not a stand-alone document because it is incorporated into the Plan and SPD by reference and,

9

even if the arbitration agreement were a stand-alone document, it lacks mutual promises to arbitrate. However, as WTE correctly points out in its reply brief, "Guerrero does not argue that there is a failure of consideration based on the incorporated provisions of the Plan and the SPD." Further, the arbitration agreement itself contains mutual agreements to arbitrate. The arbitration agreement makes clear that "the decision of the arbitrators selected hereunder shall be final and binding on both parties" and that both of their "successors, subsidiaries, affiliates, assigns, beneficiaries, heirs, children, spouses, parents and legal representatives" are bound by the agreement.

Guerrero has failed to show that the arbitration agreement was not supported by valid consideration.

### C. Fraudulent Inducement

Guerrero also alleged that "the agreement was obtained by fraudulent inducement." The elements of fraud are: (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *Formosa Plastics Corp. USA v. Presidio Engrs. & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998). Here, Guerrero alleged that WTE fraudulently represented that the Plan was optional to him "when in fact [WTE], in choosing to be a non-subscriber, was <u>required</u> to provide the Plan benefits under [Section 643.106 of the Texas Transportation Code]." [Emphasis in orig.]. However, as we have repeatedly stated,

10

Section 643.106 does not require WTE to provide its employees with benefits under the Plan. Accordingly, Guerrero has not shown that the arbitration agreement was based on fraud.

## D. Unconscionability

Guerrero argued at trial that the arbitration agreement is procedurally and/or substantively unconscionable "because [it] plainly attempts <u>to alter [his] substantive rights … under Texas law.</u>" [Emphasis in orig.]. Guerrero, however, did not meet his burden of establishing either procedural or substantive unconscionability of the arbitration agreement.

Unconscionability may be either procedural or substantive in nature. *In re Halliburton Co.*, 80 S.W.3d 566, 571 (Tex. 2002)(orig. proceeding), *cert. denied*, 537 U.S. 1112, 123 S.Ct. 901, 154 L.Ed.2d 785 (2003). Procedural unconscionability refers to the circumstances surrounding the adoption of the arbitration provision and relates to the making or inducement of the contract, focusing on the facts surrounding the bargaining process. *Id*.; *TMI, Inc. v. Brooks*, 225 S.W.3d 783, 792 (Tex.App.--Houston [14th Dist.] 2007, pet. denied). Substantive unconscionability concerns the fairness of the arbitration provision itself. *In re Halliburton Co.*, 80 S.W.3d at 571. A contract is substantively unconscionable if, "given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract." *In re Poly-Am., L.P.*, 262 S.W.3d 337, 348 (Tex. 2008)(orig. proceeding), *quoting In re FirstMerit Bank*, 52 S.W.3d at 757; *see also In re Halliburton Co.*, 80 S.W.3d at 571. Whether a contract is unconscionable at the time it is formed is a question of law. *In re Poly-Am., L.P.*, 262 S.W.3d at 348.

11

Guerrero does not point to anything in the record questioning the circumstances surrounding the adoption of the arbitration agreement and has thus failed to prove the agreement is procedurally unconscionable. *See In re Halliburton Co.*, 80 S.W.3d at 571. According to Guerrero, the provision in the Plan permitting WTE to unilaterally terminate the Plan is impermissibly eliminates the benefits under the Plan to which he is entitled pursuant to Section 643.106 of the Texas Transportation Code and violates public policy as expressed by Section 406.033(e) of the Texas Labor Code. As discussed above, Section 643.106 does not require WTE to provide its employees with benefits under the Plan. Further, as explained below in greater detail, Section 406.033(e) of the Texas Labor Code is inapplicable. Thus, Guerrero has failed to prove the arbitration agreement is substantively unconscionable.

### Tenth Amendment

Another argument raised by Guerrero at trial in support of his contention that the arbitration agreement was not subject to arbitration is his assertion that the FAA violates the Tenth Amendment to the U.S. Constitution.[4] Relying on *Hodel v. Va. Surface Mining & Reclamation Ass'n, Inc.*, 452 U.S. 264, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981), Guerrero argued that compliance with the FAA impermissibly encroaches on a State's power to enact and regulate its own workers' compensation system. This specific argument was rejected by the Texas Supreme Court in *In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 424 (Tex. 2010). There, the supreme court "conclude[d] that compliance with the [FAA] would not 'directly impair [Texas's] ability to structure integral operations in areas of traditional government functions[.]'" *Id.* at 424, *quoting*

---

[4] "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. CONST. amend. X.

12

*Hodel*, 452 U.S. at 288, 101 S.Ct. 2366. Thus, Guerrero has failed to prove that the Tenth Amendment is a defense to arbitration.

### *Non-waiver Provision*

Guerrero also contends that the arbitration agreement is void pursuant to Section 406.033(e) of the Texas Labor Code because the agreement amounts to a pre-injury waiver of his right to sue. Guerrero is mistaken. Section 406.033, which applies to non-subscribers such as WTE, limits an employer's ability to obtain contractual waivers of claims. *See* TEX.LAB.CODE ANN. § 406.033(e)-(f)(West Supp. 2013)(rendering invalid pre-injury waiver of cause of action or right by employee of nonsubscriber). In particular, Section 406.033(e) states:

> A cause of action described in Subsection (a) may not be waived by an employee before the employee's injury or death. Any agreement by an employee to waive a cause of action or any right described in Subsection (a) before the employee's injury or death is void and unenforceable.

TEX.LAB.CODE ANN. § 406.033(e). However, "an agreement to arbitrate is a waiver of neither a cause of action nor the rights provided under section 406.033(a), but rather an agreement that those claims should be tried in a specific forum." *In re Golden Peanut Co., LLC*, 298 S.W.3d 629, 631 (Tex. 2009)(per curiam). In signing the arbitration agreement in this case, Guerrero did not actually waive his right to sue, he merely agreed to a particular forum for resolution of his cause of action. Accordingly, Section 406.033(e) is inapplicable. Guerrero has therefore failed to establish that Section 406.033(e) is a defense to arbitration.

Because a valid arbitration agreement exists that covers the claim alleged by Guerrero, and no defenses to enforcement have been established, we conclude the trial court had no discretion but to stay the proceeding pending arbitration.

13

WTE's second and final issue is sustained.

## CONCLUSION

Having sustained WTE's two issues, we reverse the trial court's order denying WTE's motion to compel arbitration and remand this cause with instructions to the trial court to enter an order compelling arbitration between the parties and staying all other proceedings pending the outcome of arbitration.


June 25, 2014

                                    YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.

14