

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| | § | |
| | § | |
| IN RE: WESTERN DAIRY TRANSPORT, LLC, | | No. 08-13-00190-CV |
| | § | |
| | | AN ORIGINAL PROCEEDING |
| Relator. | § | |
| | § | IN MANDAMUS |
| | § | |
| | § | |

**O P I N I O N**

In this consolidated interlocutory appeal and petition for writ of mandamus, Appellant/Relator, Western Dairy Transport, LLC, challenges the trial court's order denying its motion to compel arbitration in the suit filed by Appellee/Real Party in Interest, Marcial Felipe Vasquez. We conclude that we lack jurisdiction over the petition for writ of mandamus. In the interlocutory appeal, we conclude that the trial court did not abuse its discretion by denying Western Dairy's motion to compel arbitration.

**FACTUAL SUMMARY**

Vasquez worked as a mechanic for Western Dairy Transport, a trucking company, and suffered a hernia while lifting a truck tire. Western Dairy is not a subscriber to Texas's workers' compensation system, but instead provides employees like Vasquez with an ERISA injury

benefit plan. The plan includes a mandatory arbitration provision, which states that it is governed by the Federal Arbitration Act (the "FAA"). Employee's claims for work-related personal injuries are within the scope of matters that must be arbitrated under the plan. Vasquez was covered under the plan, received benefits thereunder for his injuries, and signed an acknowledgment form summarizing the arbitration requirement.[1] Vasquez filed his personal injury claim against Western Dairy in the 120th Judicial District Court of El Paso County in November of 2012. Western Dairy responded to the suit with a motion to compel arbitration, which the trial court denied in June of 2013. Western Dairy challenges the denial by both interlocutory appeal and a petition for writ of mandamus.

## MANDAMUS OR INTERLOCUTORY APPEAL?

As a preliminary matter, we address whether this court has jurisdiction over the interlocutory appeal or the petition for writ of mandamus. When an arbitration agreement is subject to the FAA, a court of appeals has jurisdiction over an interlocutory appeal challenging the denial of a motion to compel arbitration.[2] *See* TEX.CIV.PRAC.&REM.CODE ANN. § 51.016 (West Supp. 2013). If the FAA does not control, however, the agreement to arbitrate may still be enforceable under Texas common law. *In re Swift Transp. Co., Inc.*, 311 S.W.3d 484, 491 (Tex.App.--El Paso 2009, orig. proceeding). *See also L.H. Lacy Company v. City of Lubbock*,

---

[1] Although Vasquez initially contended that he did not sign the acknowledgement form, before this Court he concedes that it does contain his signature, and that the arbitration provision was a mandatory condition of his employment regardless of whether he did or did not sign the form.

[2] Section 51.016 permits interlocutory appeals in matters subject to the FAA under the same circumstances in which they are permitted by 9 U.S.C. § 16 in federal actions. *See* TEX.CIV.PRAC.&REM.CODE ANN. § 51.016 (West Supp. 2013). The Texas Legislature enacted Section 51.016 in order to eliminate the necessity of parallel mandamus and interlocutory proceedings following the denial of a motion to compel arbitration implicating both the FAA and the Texas Arbitration Act. *See In re Santander Consumer USA, Inc.*, No. 01-12-00728-CV, 2013 WL 652721, at *8 (Tex.App.--Houston [1st Dist.] Feb. 21, 2013, orig. proceeding), *citing* SENATE COMM. ON STATE AFFAIRS, BILL ANALYSIS, TEX. S.B. 1650, 81st Leg., R.S. (2009). No solution to the parallel proceedings problem yet exists in cases such as this, however, where entitlement to arbitration is urged under both the FAA and Texas common law.

2

559 S.W.2d 348, 351-52 (Tex. 1977)(holding that common law arbitration and statutory arbitration are "cumulative" and part of a "dual system"). Mandamus is the appropriate procedure by which we may review the trial court's ruling on a motion to compel arbitration under the common law. *See In re Paris Packaging*, 136 S.W.3d 723, 727 & n.7 (Tex.App.--Texarkana 2004, orig. proceeding).

Western Dairy seeks to compel arbitration under the FAA, and alternatively, under Texas common law principles. But as Western Dairy asserted before the trial court, its injury benefit plan specifically provides that "the [FAA] will govern the interpretation, enforcement, and proceedings under this dispute resolution requirement." Because the plan expressly provides that it will be interpreted under the FAA, we dismiss the original proceeding in mandamus for lack of jurisdiction and consider only the interlocutory appeal. *J.B. Hunt Transport, Inc. v. Hartman*, 307 S.W.3d 804, 808 (Tex.App.--San Antonio 2010, no pet.)(refusing to consider enforceability of arbitration agreement under Texas law when the agreement specifically provided that it was to be interpreted and enforced under the FAA).[3] *Palcko v. Airborne Express, Inc*., 372 F.3d 588, 596 (3rd Cir. 2004)(arbitration agreement held enforceable under state law where agreement specified that state law would control in the event FAA was inapplicable).

---

[3] The FAA provision in *Hartman* was virtually identical to the one present here: "the [FAA] will govern the interpretation, enforcement, and proceedings under this arbitration requirement." *Hartman*, 307 S.W.3d at 808. The court's determination that this language barred application of state arbitration law flowed from a line of cases originating with the First Court of Appeals' decision in *In re Kellogg Brown & Root*, 80 S.W.3d 611, 617 (Tex.App.--Houston [1st Dist.] 2002, orig. proceeding). In *Kellogg*, the Houston court held that such language constitutes a choice-of-law provision in favor of the FAA, making it unnecessary for the party desiring arbitration "to establish that the transaction at issue involves or affects interstate commerce." *Id.* Because the FAA's interstate commerce requisite is embodied in 9 U.S.C. § 2, which is the Act's "primary substantive provision" *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp*., 460 U.S. 1, 24 (1983), we agree that language stipulating to the FAA's application forestalls any need to establish that the base transaction involves interstate commerce. Such language does not preclude, however, the necessity of determining whether 9 U.S.C. § 1 excludes the employee from the FAA's control. This matter must be analyzed under the FAA itself. 9 U.S.C. § 1; *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001).

## APPLICABLE LAW

A party seeking to compel arbitration under the FAA must establish: (1) the existence of a valid, enforceable arbitration agreement, and (2) that the claims at issue fall within the agreement's scope. *In re FirstMerit Bank*, 52 S.W.3d 749, 753 (Tex. 2001)(orig. proceeding). There is a presumption in favor of arbitration under both state and federal law when ambiguities arise in regard to an arbitration agreement's scope, but there is no such presumption in regard to the agreement's validity. *Id*.; *Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069, 1074 (5th Cir. 2002). Validity is instead determined by the requirements of general contract law of the applicable state. *Morrison v. Amway Corp.,* 517 F.3d 248, 254 (5th Cir. 2008); *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 606 (Tex. 2005)(orig. proceeding). Once the questions of validity and scope are resolved affirmatively, the court then considers whether any federal statute or policy "renders the claims nonarbitrable." *Mendez v. New Bell General Services, L.P.*, 727 F.Supp.2d 585, 589 (W.D.Tex. 2010), *quoting Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir. 2008). The party seeking to invalidate an arbitration agreement bears the burden of establishing this matter, as well as other defenses to arbitration, such as unconscionability, fraud, duress, or waiver. *Gonzales v. Brand Energy & Infrastructure Services, Inc.*, No. H-12-1718, 2013 WL 1188136, at * 2 (S.D.Tex. Mar. 20, 2013), *citing Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004). *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex. 1999), *abrogated on other grounds by, In re Halliburton Co.*, 80 S.W. 3d 566, 571 (Tex. 2002)(orig. proceeding).

Whether an agreement imposes a duty to arbitrate is a question of law that the appellate court reviews *de novo*. *In re C & H News Co.,* 133 S.W.3d 642, 645 (Tex.App.--Corpus Christi 2003, orig. proceeding). The trial court's related factual determinations, however, fall under the

4

no-evidence standard. *Sidley Austin Brown & Wood, LLP v. J.A. Green Development Corp.*, 327 S.W.3d 859, 862-63 (Tex.App.--Dallas 2010, no pet.)(analyzing these standards of review for purposes of interlocutory review under Section 51.016 of the Civil Practice and Remedies Code). This standard is the same as the abuse of discretion standard of review. *Id.*

## THE SCOPE AND VALIDITY OF THE ARBITRATION AGREEMENT

Western Dairy has satisfied its initial burden of demonstrating the existence of a valid arbitration agreement. The injury benefit plan and plan summary set out the terms of the arbitration provision. Vasquez signed an acknowledgement form summarizing the arbitration provision and confirming his receipt of the plan summary. Additionally, there is adequate consideration in support of the arbitration agreement. A summary of the plan provides that the arbitration policy applies to claims brought by either Western Dairy or Vasquez, and that the agreement to arbitrate is binding upon both. Our Supreme Court holds that reciprocal pledges to arbitrate constitute sufficient consideration so long as the employer cannot unilaterally opt out of its promise to arbitrate. *In re Halliburton Co.,* 80 S.W.3d at 569-70; *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 228 (Tex. 2003). The plan specifies that Western Dairy cannot amend or terminate the arbitration provision with respect to any injury claim arising before any effort to amend or terminate is made. In *Odyssey Healthcare*, the Texas Supreme Court held that a virtually identical termination and amendment clause did not render the arbitration agreement illusory. *In re Odyssey Healthcare, Inc*., 310 S.W.3d 419, 424 (Tex. 2010)(orig. proceeding). *See also In re Halliburton Co*., 80 S.W.3d at 569-70. Accordingly, Western Dairy does not have the right to unilaterally opt out of its pledge to arbitrate. Western Dairy has also established that Vasquez's personal injury claim falls within the scope of the arbitration agreement. The acknowledgment form Vasquez signed provides as follows: "I also acknowledge that [the plan]

includes a mandatory company policy requiring that claims or disputes relating to the cause of an on-the-job injury . . . be submitted to [arbitration]." Accordingly, the only remaining issue is whether any federal statute or policy renders the claim nonarbitrable.

### DOES 9 U.S.C. § 1 EXCLUCE VASQUEZ FROM THE FAA'S CONTROL?

Section 2 of the FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 1 sets forth the exclusions to Section 2. 9 U.S.C. § 1. Section 1, however, expressly limits the reach of the FAA by exempting from its coverage the "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."[4] *Id*. The Unites States Supreme Court has analyzed section 1, focusing on the residual phrase, "or any other class of workers engaged in foreign or interstate commerce." *Circuit City Stores, Inc*., 532 U.S. at 112.

In *Circuit City*, the Supreme Court reviewed the Ninth Circuit's holding that the residual phrase exempted *all* employment contracts from the FAA, including that of a sales counselor at a retail store whose job duties were not closely related to interstate commerce. *Id.* at 110, 112. The court held that the Ninth Circuit's interpretation failed to give proper effect to section 1's preceding reference to "seamen" and "railroad employees," and was thus too broad. *Id.* at 114. In reaching this conclusion, the court applied the maxim of *ejusdem generis*, which stands for the principle that where "general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Id*. at 114-15 [Citations omitted]. Section 1's residual phrase is thus controlled and defined by the statute's preceding reference to seaman and railroad employees.

---

[4] Western Dairy does not argue that the arbitration provision is not a "contract of employment" within the meaning of 9 U.S.C. § 1.

*Id.* at 115, 119. Accordingly, 9 U.S.C. § 1 "exempts from the FAA only employment contracts of transportation workers." *Id*. at 119. The *Circuit City* opinion does not, however, provide express direction for determining whether an individual employee qualifies as a "transportation worker." Federal courts have subsequently made this determination on a case-by-case basis. *See*, *e.g.*, *Lorntzen v. Swift Transp., Inc*., 316 F.Supp.2d 1093, 1097 (D.Kan. 2004).

"In order to be considered a transportation worker, an employee must actually be employed in the transportation industry, that is, an industry directly involved in the movement of goods." *Zamora v. Swift Transp. Corp*., No. EP-07-CA-00400-KC, 2008 WL 2369769, at *6 (W.D.Tex. June 3, 2008), *citing Lenz v. Yellow Transp., Inc*., 431 F.3d 348, 351 (8th Cir. 2005). There is no dispute that Western Dairy, as an interstate trucking company, is part of the transportation industry. "[T]he more related to the transportation industry an enterprise is, the less necessary it becomes for the employee to be directly transporting goods" in order for Section 1's exclusion to apply. *Id.*, *quoting Veliz v. Cintas Corp*., No. C-03-1180-SBA, 2004 WL 2452851, at *5 (N.D.Cal. Apr. 5, 2004). Nonetheless, employment within the transportation industry alone is not sufficient. The employee's individual responsibilities "must be closely related to interstate commerce," although he "need not actually transport the goods himself for the exemption to apply." *Id.*, *citing Lenz*, 431 F.3d at 351-52.

In *Lenz v. Yellow Transp., Inc*., the Eighth Circuit set out a nonexclusive eight-part test for determining whether an employee is a transportation worker for purposes of the 9 U.S.C. § 1 exclusion. *Lenz*, 431 F.3d at 352. At least two federal district courts situated in Texas have applied the *Lenz* test. *Zamora*, 2008 WL 2369769 at *6; *Barker v. Halliburton Co*., No. H-07-2677, 2008 WL 1883880, at *1-2 (S.D.Tex. Apr. 25, 2008). *Lenz's* eight nonexclusive factors are as follows: (1) whether the employee works in the transportation industry; (2) whether the

7

employee is directly responsible for transporting goods in interstate commerce; (3) whether the employee handles goods that travel interstate; (4) whether the employee supervises employees who are themselves transportation workers, such as truck drivers; (5) whether like seamen or railroad employees, the employee is within a class of employees for which special arbitration already existed when Congress enacted the FAA; (6) whether the vehicle itself is vital to the commercial enterprise of the employer; (7) whether a strike by the employee would disrupt interstate commerce; and (8) the nexus that exists between the employee's job duties and the vehicle the employee uses in carrying out his duties. *Lenz*, 431 F.3d at 352. Western Dairy concedes that these factors properly embrace the standards announced by the Supreme Court in *Circuit City, Inc. v. Adams*.

Beginning with the first factor of *Lenz*, there is no question that Vasquez works in the transportation industry. *See Lenz*, 431 F.3d at 351. This factor weighs in favor of determining that Vasquez is a transportation worker. The second factor, Vasquez's direct responsibility for the movement of goods in interstate commerce, weighs against Vasquez. Unlike truck drivers, who are indisputably transportation workers, Vasquez is not personally responsible for the movement of goods. *See id*. (noting that truck drivers are "indisputably" transportation workers for purposes of 9 U.S.C. § 1), *citing Harden v. Roadway Package Sys., Inc.*, 249 F.3d 1137 (9th Cir. 2001). We consider the third factor to be neutral, because although Vasquez does not handle goods that travel interstate, he handles the indispensable instrumentality of their travel: the trucks themselves. *Id*. at 352. Vasquez does not satisfy the fourth *Lenz* factor as he does not supervise employees who are themselves transportation workers. *Id*. The fifth factor--whether Vasquez is subject to special arbitration provisions like seamen and railroaders--is also effectively neutral to our analysis. While there has been no showing that Vasquez is subject to special arbitration

8

provisions, there has been no showing that any Western Dairy employee is subject to such provisions. Indeed, it appears that there are no such special arbitration provisions even for truck drivers, despite the fact that they unquestionably qualify as transportation workers.

The last three *Lenz* factors, which consider the importance of trucks and truck mechanics to Western Dairy's overall business, weigh heavily in favor of Vasquez being a transportation worker. The sixth factor asks whether the vehicle itself is vital to the commercial enterprise of the employer. *Id.* The trucks that Vasquez serviced and kept running for Western Dairy are not just vital to Western Dairy's business, they *are* its business. *Id.* For that reason, seventh, a strike by Western Dairy's mechanics would clearly disrupt its participation in interstate commerce. *Id.* Eighth and lastly, there is a very clear nexus between the job duties of a mechanic and the vehicles he works on. Without trucks there are no mechanics; without mechanics, there are no trucks.

In sum, four of the *Lenz* factors weigh heavily in favor of holding Vasquez to be a transportation worker, two weigh against it, and two are neutral to our analysis. We hold that Vasquez is a transportation worker for purposes of 9 U.S.C. § 1.

Western Dairy asserts that three other courts have previously determined that a mechanic is not a transportation worker for purposes of Section 1. Two of the cases Western Dairy relies on did not concern exclusion under 9 U.S.C. § 1, but turned instead on whether the mechanics' claims were within the scope of the arbitration agreements, and/or whether the agreement was unconscionable. *See Sammons v. Sonic-North Cadillac, Inc.*, No. 6:07-cv-277-Orl-19DAB, 2007 WL 2298032, at *2-3 (M.D.Fla. 2007, Aug. 7, 2007)(turning on scope); *Giordano v. Pep Boys-Manny, Moe, & Jack, Inc.*, No. CIV. A. 99-1281, 2001 WL 484360, at *3-7 (E.D.Pa. Mar. 29, 2001)(turning on scope and unconscionability). Western Dairy's third case, *Dwyer v. Eagle*

9

*Marine Servs. Ltd., Oakland*, was an effort by a plaintiff-employee to vacate an arbitrator's award entered under the Labor Management Relations Act ("LMRA") by arguing that the FAA rather than the LMRA controlled. *See Dwyer v. Eagle Marine Servs. Ltd., Oakland*, No. C 10-4440 SBA, 2011 WL 2600916, at * 3 (N.D.Cal. June 30, 2011). The employer, rather than the employee, argued that the FAA was inapplicable by virtue of 9 U.S.C. § 1. *Id*. at *3-4. The court found the record to be inconclusive, however, and did not determine whether the mechanic was excluded under section 1. *Id.* In short, none of these cases hold that a mechanic is not a transportation worker under section 1.[5]

Western Dairy also relies on cases in which employees other than mechanics were determined not to be transportation workers. These cases are obviously factually distinct. *See Omoruyi v. Grocers Supply Co., Inc*., No. 14-09-00151-CV, 2010 WL 1992585, at *4 (Tex.App.--Houston [14th Dist] May 20, 2010, no pet.)(holding that a warehouse employee was not a transportation worker); and *Kropfelder v. Snap-On Tools Corp*., 859 F. Supp. 952, 958-59 (D. Md. 1994)(same). *See also Tran v. Texan Lincoln Mercury, Inc*., No. H-07-1815, 2007 WL 2471616, at *4 (S.D. Tex. Aug. 29, 2007)(holding that a car dealership's finance manager was not transportation worker). Unlike Vasquez, the employees in these cases were not "so closely related [to interstate commerce] as to be in practical effect part of it." *Lenz*, 431 F.3d at 352, *quoting Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 593 (3rd Cir. 2004).

We hold that Vasquez is a transportation worker for purposes of 9 U.S.C. § 1, and that he is thus exempt from the FAA's control. As such, the trial court did not abuse its discretion by denying Western Dairy's motion to compel arbitration.

---

[5] Another case cited by Western Dairy, *Mamat v. United Fruit Co*., held that an employee who was part of a "shore gang" that effected repairs on a ship did not qualify as a seaman, but was instead a longshoreman, and thus that his personal injury claims were barred by the Longshoremen's Compensation Act, 33 U.S.C. § 901, *et seq*. *Mamat v. United Fruit Co*., 39 F.Supp. 103 (S.D.N.Y. 1940). This case predates the FAA, which was enacted in 1947.

July 30, 2014

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.