

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| OEP HOLDINGS, LLC, | | No. 08-17-00159-CV |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | 41st District Court |
| | § | |
| MOHAMMAD AKHONDI, | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC # 2016-DCV0460) |
| | § | |

**O P I N I O N**

In this appeal, we decide if an "orientation instructor" for a trucking company is a "transportation worker" under the Federal Arbitration Act. Based on the trial court's finding that an orientation instructor is a transportation worker, the trial court denied OEP Holdings, LLC's (OEP) motion to compel arbitration. We affirm the trial court's decision.

**BACKGROUND**

This is an employment discrimination case. Mohammed Akhondi worked for OEP, a staff leasing company. OEP provided workers, including Akhondi, to Mesilla Valley Transportation (MVT), a national over-the-road trucking company. Akhondi signed an arbitration agreement with OEP requiring that employment discrimination claims be resolved through arbitration. When OEP terminated his employment, Akhondi filed suit asserting age discrimination, along with a retaliation claim. OEP moved to compel arbitration under the Federal Arbitration Act (FAA).

Akhondi does not dispute that he signed the agreement, or that the text of the agreement would cover a dispute such as this, nor does he raise any of the traditional affirmative defense to arbitration. Rather the narrow question below, and before us, is whether he is a transportation worker under the FAA.

The FAA requires the enforcement of arbitration agreement, but excepts "contracts of employment of seamen, railroad employees, or *any other class of workers engaged in foreign or interstate commerce.*" [Emphasis added]. 9 U.S.C. § 1. No one would seriously dispute that truck drivers generally fall within that class, and thus the scope of the exception. *See e.g. In re Swift Transp. Co.*, Inc., 311 S.W.3d 484, 488-89 (Tex.App.--El Paso 2009, orig. proceeding) (noting truck driver fell within exception). Trucking companies, however, employ other classes of workers to accomplish their mission, including mechanics, dispatchers, loaders, trainers, and as relevant here, orientation instructors. Does an orientation instructor, as described in this record, fall within the class of transportation workers exempted by the FAA? That trial court said yes, and it declined to enforce the arbitration agreement. OEP brings this interlocutory appeal[1] and in a single issue, claims that the trial court abused its discretion in doing so.

## STANDARD OF REVIEW

We review a trial court's decision to grant or deny a motion to compel arbitration for an abuse of discretion. *Ellman v. JC General Contractors*, 419 S.W.3d 516, 520 (Tex.App.--El Paso 2013, no pet.). Under this standard, we defer to a trial court's factual determinations if they are supported by some evidence, but we review a trial court's legal determinations *de novo*. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009); *Ellman*, 419 S.W.3d at 520; *Sidley Austin Brown & Wood, LLP v. J.A. Green Development Corp.*, 327 S.W.3d 859, 862-63

---

[1] *See* TEX.CIV.PRAC.&REM.CODE ANN. § 171.098(a)(1)(West 2011)(allowing interlocutory appeal of denial of motion to compel arbitration).

(Tex.App.--Dallas 2010, no pet.)(applying a no-evidence standard to the trial court's factual determinations and a de novo standard to legal determinations under the Texas Arbitration Act). Because the trial court here did not enter specific findings of fact or conclusions of law to explain its denial of the motion to compel arbitration, we infer that the trial court made all the necessary findings to support its ruling. *Kmart Stores of Texas, L.L.C. v. Ramirez*, 510 S.W.3d 559, 565 (Tex.App.--El Paso 2016, pet. denied)(analogizing disputed motion to compel arbitration to a non-jury trial proceeding).

## ARBITRATION UNDER THE FAA

Generally, the FAA provides for the enforceability of "any maritime transaction or a contract evidencing a transaction involving commerce." 9 U.S.C. § 2 (2009). Congress exempted from the FAA's coverage, however, "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1 (2009). This exclusion provision "is limited to transportation workers, defined, [. . .], as those workers 'actually engaged in the movement of goods in interstate commerce.'" *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 112, 121 S.Ct. 1302, 1307, 149 L.Ed.2d 234 (2001), *quoting Cole v. Burns Int'l Security Servs.*, 105 F.3d 1465, 1471 (D.C.Cir. 1997). The exclusion expresses a "concern with transportation workers and their necessary role in the free flow of goods. . . ." *Circuit City*, 532 U.S. at 121, 121 S.Ct. at 1312. It also evidences a Congressional intent to reserve regulation of those employees for separate legislation more specific to the transportation industry. *Id*. at 120-21, 121 S.Ct. at 1312; *Hill v. Rent-A-Ctr., Inc.*, 398 F.3d 1286, 1289 (11th Cir. 2005). Congress's emphasis, however, "was on a class of workers in the transportation industry, rather than on workers who incidentally transported goods interstate as part of their job in an industry that would otherwise be unregulated." *Hill*, 398 F.3d at 1289.

Differentiating transportation workers from those who only incidentally aide in the transport of goods is a fact intensive inquiry. This Court concluded that a mechanic employed by a trucking company was a transportation worker, and thus exempt from the FAA. *Western Dairy Transport, LLC v. Vasquez*, 457 S.W.3d 458, 463 (Tex.App.--El Paso 2014, no pet.). The United States Court of Appeals for the Third Circuit found that a "field services supervisor" who oversaw between 30 and 35 drivers was also a transportation worker. *Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 590 (3rd Cir. 2004); *see also Zamora v. Swift Transportation Corp.*, 2008 WL 2369769, at *9 (W.D.Tex. 2008), *aff'd*, 319 Fed. Appx. 333 (5th Cir. 2009)(unpublished)(terminal manager who was directly responsible for the overall success and profitable operation of defendant's terminal was a transportation worker). Other courts have reached the opposite conclusion for other classes of employees. *See McNamara v. Yellow Transportation, Inc.*, 570 F.3d 950 (8th Cir. 2009) (customer relations manager was not a transportation worker under FAA); *Bell v. Ryan Transportation Serv., Inc.*, 176 F.Supp.3d 1251, 1255-56 (D. Kan. 2016)(freight broker employed by a logistics company that itself operated no trucks was not a transportation worker); *Lorntzen v. Swift Transp., Inc.*, 316 F.Supp.2d 1093, 1097 (D.Kan. 2004)("Safety Compliance Assistant" at a transportation company was not a transportation worker). And courts have more uniformly found that workers employed by companies that only assist those who transport persons or goods do not fall within the exemption.[2]

---

[2] *See e.g. Pilot Travel Centers, LLC v. McCray*, 416 S.W.3d 168, 187 (Tex.App.--Dallas 2013, no pet.)(truck stop maintenance worker was no more engaged in interstate movement of goods than clerk at truck stop or wait staff at truck stop restaurant); *Omoruyi v. Grocers Supply Co., Inc.*, No. 14-09-00151-CV, 2010 WL 1992585, at *4 (Tex.App.--Houston [14th Dist.] May 20, 2010, no pet.)(not designated for publication)(holding that a warehouse employee was not a transportation worker); *Tran v. Texan Lincoln Mercury, Inc.*, No. H-07-1815, 2007 WL 2471616, at *4 (S.D.Tex. Aug. 29, 2007)(holding that a car dealership's finance manager was not transportation worker); *Perez v. Globe Airport Sec. Serv., Inc.*, 253 F.3d 1280, 1284 (11th Cir. 2001)(pre-departure security agent at international airport who inspected goods was not a transportation worker); *Cole v. Burns Int'l Sec. Serv.*, 105 F.3d 1465, 1472 (D.C.Cir. 1997)(security guard at a train station was not a "transportation worker" because he was not actually involved in the " 'flow' " of commerce, meaning he was not responsible for the transportation and distribution of the goods).

4

In *Lenz v. Yellow Transp., Inc.,* the Eighth Circuit set out a nonexclusive eight-part test for determining whether an employee is a transportation worker for purposes of the 9 U.S.C. § 1 exclusion.  431 F.3d 348, 352 (8th Cir. 2005).  This Court recently applied the *Lenz* test.  *Vasquez*, 457 S.W.3d at 465-67; *see also Zamora,* 2008 WL 2369769, at \*6.  *Lenz's* eight nonexclusive factors include:  (1) whether the employee works in the transportation industry; (2) whether the employee is directly responsible for transporting goods in interstate commerce; (3) whether the employee handles goods that travel interstate; (4) whether the employee supervises employees who are themselves transportation workers, such as truck drivers; (5) whether like seamen or railroad employees, the employee is within a class of employees for which special arbitration already existed when Congress enacted the FAA; (6) whether the vehicle itself is vital to the commercial enterprise of the employer; (7) whether a strike by the employee would disrupt interstate commerce; and (8) the nexus that exists between the employee's job duties and the vehicle the employee uses in carrying out his duties.  *Lenz,* 431 F.3d at 352.  OEP concedes that these factors should guide our decision in this case.

### AKHONDI'S JOB DUTIES

Akhondi started with MVT in 2011 as a dispatcher.  At the time of his termination, he held the job title of "orientation instructor."  The parties evidenced his job duties through the live testimony of Luis Garcia (MVP's director of recruiting), the affidavit and live testimony of Akhondi, and the written job description for the position.

The "orientation instructor" job description summarizes the position as developing and conducting an orientation program for new drivers and re-hires.  Akhondi would develop and conduct that program by: (1) determining the training needs within MVT; (2) providing guidance to operations employees, new drivers, and re-hired drivers; (3) presenting MVT's policies and

5

procedures; (4) selecting, developing and updating teaching aids; (5) instructing drivers on federal Department of Transportation rules and regulations; (6) updating the driver handbook as needed, and communicating those changes; (7) conducting orientation sessions for new employees, including on-the-job training, and use of specified software packages; (8) coordinating driver truck assignments; (9) testing trainees to measure progress and to evaluate effectiveness of training; (10) maintaining records of all testing for drivers and re-hires; and (11) reporting to the Operations Manager any job refusals or negative conduct among orientation attendees. While the job did not require the orientation instructor to have a commercial driver's license, Akhondi did at that time.

Akhondi's affidavit explained his orientation duties as follows:

> As an Orientation Training Instructor for MVT, I trained drivers that transported goods throughout the country. As a trainer, I handled the trucks which were used to transport goods. On some occasions, I drove these trcuks [sic] from El Paso, TX to Arizona and New Mexico for training purposes. On one occasion, I trained a driver where goods were actually transported from El Paso, TX. As a trainer, I would supervise truck drivers that transported goods throughout the country. The trucks and trailers that I used for training were critical to MVT's operations as a trucking company. I trained drivers using the same trucks that the truck drivers used to transport goods.

Akhondi testified at the hearing on the motion to compel arbitration. He explained that he took each new driver out to their assigned rig and taught them (1) how to use the unique software packages that MVT uses in its trucks, (2) how to use the standard stick shifts in MVT vehicles, and (3) how to perform a pre-trip inspection of the rig. On three or four occasions during the two and half year period that he was the orientation instructor, he went with the drivers to the ports of entry to show them how DOT inspections are done at state borders. On one occasion, and at the direction of his supervisor, he accompanied a driver from El Paso to Albuquerque to train the driver on the software and how to back the truck to a dock. MVT has a "miles per gallon" program to promote fuel economy; Akhondi testified that he would also teach drivers ways to improve their driving to save fuel. He admitted that his use of the word "supervise" in his affidavit was an error.

6

He was, however, also a member of a three-person incident review committee that would review driver accidents, and make recommendations stemming from those accidents, including whether the driver should be terminated or otherwise disciplined.

At the hearing below, OEP relied on the testimony of Luis Garcia, who was the director of recruiting for MVP. He testified that Akhondi would not have any duties requiring him to be on the road with truckers, nor the actual transportation of goods. Garcia acknowledged, however, that his testimony was based on assumptions about what the orientation instructor would do, and was not based on any personal knowledge of Akhondi's actual job.

**APPLICATION**

While the parties dispute how some of the *Lenz* factors apply, all agree that MVT is in the transportation industry (the first *Lenz* factor). The concession is significant, because "the more related to the transportation industry an enterprise is, the less necessary it becomes for the employee to be directly transporting goods" in order for Section 1's exclusion to apply. *Zamora*, 2008 WL 2369769, at *6, *quoting Veliz v. Cintas Corp.,* No. C-03-1180-SBA, 2004 WL 2452851, at *5 (N.D.Cal. Apr. 5, 2004). Not that employment within the transportation industry alone is sufficient: the employee's individual responsibilities "must be closely related to interstate commerce," although they "need not actually transport the goods himself for the exemption to apply." *Zamora*, 2008 WL 2369769, at *6, *citing Lenz,* 431 F.3d at 351–52. The first factor thus weighs heavily in Akhondi's favor.

The second factor (direct responsibility for the movement of goods in interstate commerce) and the third factor (handles interstate goods) weighs against Akhondi. Unlike truck drivers who transport goods interstate, Akhondi is not personally responsible for the transport or handling of

7

goods.  The fact that he did so on one occasion would not be sufficient to turn this factor in his favor.

The fourth factor (supervision of employees who are themselves transportation workers) also weighs somewhat against Akhondi.  He is not a supervisor in the strict sense of the word, in that he does not hire, fire, or direct the daily tasks of MVT's truck drivers.  He does, however, instruct them on company policies, coordinate driver assignments, and is required to report negative information on new drivers to the operations manager.  As a part of an accident review committee, he had input into disciplinary recommendations which management most of the time followed.  OEP argues, and Akhondi does not contest, that the fifth factor--whether Akhondi is subject to special arbitration provisions like seamen and railroaders--is effectively neutral to our analysis.

Two of the last three *Lenz* factors weigh in favor of Akhondi being a transportation worker. The sixth factor asks whether the vehicle itself is vital to the commercial enterprise of the employer.  *Id.*  There is some evidence in the record that MVT is a trucking company and that trucks are essential to its operation.  *See Zamora*, 2008 WL 2369769, at *7-8 ("Clearly, a truck, as a vehicle, is critical to the operations and the economic viability of a trucking company such as Swift.").  And while Akhondi does not repair or maintain a truck as did the truck mechanic in *Vasquez*, he instructs drivers on the use of unique software that MVT uses as a part of its business model.  For much the same reason, there is some evidence in the record supporting the eighth factor--a nexus between the orientation instructor and the operation of the trucks.[3]  Akhondi

---

[3] OEP in its reply brief asks that this factor be strictly applied as the *Lenz* court originally parsed it: "eighth, the nexus that exists between the employee's job duties and the vehicle the employee uses in carrying out his duties (i.e., a truck driver whose only job is to deliver goods cannot perform his job without a truck)." *Lenz*, 431 F.3d at 352. According to OEP, because Akhondi did not have a truck, he must lose on this factor.  However, the *Lenz* factors are just that--factors--that were non-exclusive and gleaned from several earlier published opinions.  We do not feel constrained to strictly apply them as we would statutory language.

instructs on the software used in the truck's operation, as well as routine safety checks, and DOT inspections necessary to comply with state and federal law. And while not a frequent duty, he has also accompanied truck drivers over the road to instruct them on clearance through the ports of entry, and on one occasion, backing the truck into a dock. Cf. *Zamora*, 2008 WL 2369769, at \*7-8 (terminal managers occasional driving of trucks considered for one of the *Lenz* factors). His written job description specifically contemplated that Akhondi would conduct "on-the-job training."

The seventh *Lenz* factor asks whether a strike by the class of worker at issue would disrupt commerce. *Lenz,* 431 F.3d at 352. The parties introduced no evidence below on that issue, though presumptively a trucking company could operate without interruption at least for a time because the orientation instructor focuses on new employees. We would weigh this factor somewhat in OEP's favor.

In sum, three of the *Lenz* factors weigh in favor of Akhondi, and do so heavily enough to counterbalance the opposing factors. As the trial court alluded to below, a truck is of no use without a driver, and a driver cannot accomplish the job without a truck. Both are essential to transporting goods. And just as the mechanic in *Vasquez* was essential in maintaining the truck, there is some evidence in the record to support the trial court's implied finding that Akhondi's position was essential in preparing the drivers to perform their job.

Aside from the *Lenz* analysis, OEP places emphasis on a U.S. Department of Labor bulletin explaining that "office personnel" are not exempt from overtime pay rules in the Fair Labor Standards Act ("FLSA"). Without citation to authority, OEP's brief claims the exemption only applies to those "positions [which] are deemed to have a nexus between the work required and the movement of goods within interstate commerce." To the contrary, the exemption is based on

9

several factors, including the safety component of the job. Thus how the Department of Labor treats classes of transportation workers on overtime pay is not determinative of how a court treats them under the FAA.

Generally, the FLSA requires an employer to pay overtime to any nonexempt employees who work more than forty hours in a seven-day work week. *See* 29 U.S.C. § 207(a)(1). The overtime pay rules in the FSLA, however, "shall not apply with respect to . . . any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section [49 U.S.C. § 31,502]." 29 U.S.C. § 213(b)(1). In turn, the Secretary of Transportation has the power to establish qualifications and maximum hours of service for employees who (1) are employed by carriers whose transportation of passengers or property by motor vehicle is subject to the Secretary's jurisdiction under the Motor Carrier Act; and (2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act. 29 C.F.R. § 782.2(a); *Baez v. Wells Fargo Armored Serv. Corp.*, 938 F.2d 180, 181-82 (11th Cir. 1991). Accordingly, the denial of an FSLA exemption could have as much to do a job lacking the necessary safety component as its relation to the transportation of goods. By contrast, the exemption in Section 1 of the FAA is not determined by the safety aspect of the job, but by whether the class of employees are actually engaged in the movement of goods in interstate commerce. *Circuit City*, 532 U.S. at 112, 121 S.Ct. at 1307. Accordingly, we fail to see how the lack of an FSLA exemption for orientation instructors determines whether Akhondi is a transportation worker for the purposes of the FAA.[4]

---

[4] Even at that, MVT's director of recruiting conceded that some of the rules and policies that Akhondi taught were safety sensitive. Moreover, the Department of Labor memo addresses "office personnel" and does not explicitly

We hold that the trial court did not abuse its discretion in finding Akhondi to be a transportation worker for purposes of 9 U.S.C. § 1 and consequently, that the arbitration agreement is exempted from enforcement under the FAA.[5]

## CONCLUSION

OEP's single point of error is overruled, and the judgment of the trial court is affirmed.


July 31, 2018

SUSAN LARSEN, Senior Judge

Before Rodriguez, Palafox, JJ., and Larsen, J. (Senior Judge),
Larsen, J. (Senior Judge), sitting by assignment

---

mention orientation instructors. OEP claimed that Akhondi was an office worker who could do all of his instruction in a simulator unit at the office. Akhondi testified that he taught the drivers in their trucks, and at times on the road. Some evidence supports the trial court's implied finding that Akhondi was more than just an office worker.

[5] Several courts have held that the Section 1 exemption in the FAA does not render the arbitration agreement void, it merely precludes the FAA as the enforcement tool. *See Valdes v. Swift Transp. Co.*, 292 F.Supp. 524, 527-29 (S.D.N.Y. 2003)(collecting cases); *In re Weeks Marine, Inc.*, 242 S.W.3d 849, 853 (Tex.App.--Houston [14th Dist.] 2007, orig. proceeding)("Jimenez argues the Agreement in this case is excepted from the FAA. If so, Weeks Marine has remedy by interlocutory appeal under the Texas General Arbitration Act . . . ."); *In re Swift Transp. Co. Inc.*, 311 S.W.3d 484, 491 (Tex.App.--El Paso 2009, orig. proceeding). At oral argument, Appellant affirmatively stated that OEP does not claim the Texas act applies. Moreover, the parties have not addressed the enforcement of the arbitration agreement under state law, either at the trial court, or in the briefing to this Court. Accordingly, that issue is not before us and we do not address it.

11