

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| ARROW FREIGHT MANAGEMENT, INC., | § | No. 08-23-00082-CV |
| Appellant, | § | Appeal from the |
| v. | § | 384th Judicial District Court |
| RUBEN CONTRERAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 2022-DCV-0305) |

## MEMORANDUM OPINION

In this interlocutory appeal, Appellant Arrow Freight Management, Inc. (Arrow Freight), appeals the trial court's denial of its motion to compel arbitration pursuant to an agreement it entered with Appellee Ruben Contreras, a worker it employed as a truck driver. TEX. CIV. PRAC. & REM. CODE § 51.016; 9 U.S.C. § 16(a) (allowing for appeals of orders denying arbitration under the FAA). Finding no abuse of discretion, we affirm.

## BACKGROUND

Alleging damages for personal injuries, Contreras filed a negligence lawsuit against Arrow Freight and Foster Electric.[1] He alleged that, on or about February 15, 2021, while working in the course and scope of his employment with Arrow Freight, he slipped on ice and fell due to a

---

[1] Foster Electric is not a party to this appeal.

dangerous condition on the premises of Foster Electric. Contreras alleged that Arrow Freight sent him out in dangerous conditions without proper training or equipment as necessary for the existing conditions. He also alleged that any arbitration agreement was void and invalid as a matter of law and void for being against public policy.

Initially, Arrow Freight responded by filing an original answer including general denials, affirmative defenses, and a demand for arbitration. After five months, it filed a motion to stay proceedings and compel arbitration based on an arbitration agreement it claimed Contreras had signed. To its motion, Arrow Freight attached a purported Arbitration Agreement, effective as of December 1, 2012 (the 2012 agreement), signed by Contreras on January 15, 2013; an affidavit from Raquel Urban, a custodian of Arrow Freight's records; a copy of a sign-in sheet acknowledging Contreras's attendance at a meeting on June 26, 2015, where Arrow Freight distributed copies of its "Occupational Injury Benefit Plan Summary Description, Schedule of Benefits, and Arbitration agreement;" and a copy of Arrow Freight's 2015 Arbitration Agreement. By her affidavit, Urban attested Contreras had read and signed the 2012 agreement. The 2012 agreement stated that Arrow Freight "is engaged in interstate commerce and that the Federal Arbitration Act (the "FAA") will govern all aspects of [the] agreement." It further provided that the parties had agreed to mandatory arbitration for certain claims, including those arising from work injuries. The subsequent agreement, which was dated as effective as of December 1, 2015, further provided that Contreras was deemed to have accepted the arbitration agreement as follows:

> If you are already working for [Arrow Freight] when you receive notice of this Arbitration Agreement, and you continue working for us for more than three more days, you will be deemed to have accepted the terms of this arbitration Agreement on the fourth day, and thereafter. In the event, the fourth day is your effective date to be governed by this Arbitration Agreement. IF YOU CONTINUE TO WORK FOR US AFTER THE EFFECTIVE DATE, YOU AND

2

WE WILL HAVE MUTUALLY AGREED TO ARBITRATE ALL
COVERED CLAIMS BETWEEN US, APPLYING THE TERMS
OF THIS ARBITRATION AGREEMENT."

Opposing compelled arbitration, Contreras filed a response asserting the claims he asserted did not fall within the scope of the arbitration provision. Specifically, he urged that his claims, as an interstate truck driver, were expressly excluded from the company's arbitration requirements.

On September 22, 2022, the trial court held a non-evidentiary hearing on Arrow Freight's motion to compel arbitration, receiving argument from both sides of the dispute. Subsequently, the trial court signed a written order denying Arrow Freight's motion to compel arbitration. Thereafter, Arrow Freight timely appealed.

## DISCUSSION

In a single issue, Arrow Freight asserts the trial court abused its discretion in denying its motion to stay and compel arbitration. Arrow Freight contends its arbitration agreement is valid and enforceable, that Contreras agreed to its terms, and their current dispute falls within the scope of their agreement. Arguing the trial court correctly denied Arrow Freight's motion, Contreras counters he was exempt from mandatory arbitration under an exception in the Federal Arbitration Act (FAA), which applies to transportation workers. In the alternative, Contreras argues that even if his claims are not exempt from arbitration under the FAA, they are exempt under the very terms of the arbitration agreement itself.

### A. Standard of review and applicable law

"We review a trial court's decision to grant or deny a motion to compel arbitration for an abuse of discretion." *ReadyOne Indus., Inc. v. Lopez*, 551 S.W.3d 305, 310 (Tex. App.—El Paso 2018, pet. denied); *Delfingen US-Texas, L.P. v. Valenzuela*, 407 S.W.3d 791, 800 (Tex. App.—El

3

Paso 2013, no pet.). In doing so, we defer to factual determinations, if they are supported by the evidence, and review legal determinations de novo. *ReadyOne*, 551 S.W.3d at 310; *Delfingen*, 407 S.W.3d at 798.

A party seeking to compel arbitration must (1) establish the existence of a valid arbitration agreement; and (2) show that claims asserted are within the scope of the agreement. *See In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 605 (Tex. 2005) (per curiam). We apply state contract principles to determine whether a valid arbitration agreement exists. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003); *Delfingen*, 407 S.W.3d at 800. Once the party seeking to compel arbitration has proven that a valid arbitration agreement exists, a presumption attaches in favor of arbitration and the burden of proof then shifts to the party resisting to establish a defense to enforcement. *Delfingen*, 407 S.W.3d at 800. Because the trial court here did not enter specific findings of fact or conclusions of law to explain its denial of the motion to compel arbitration, we must uphold the trial court's decision on any appropriate legal theory urged below. *Shamrock Foods Co. v. Munn & Assocs., Ltd.*, 392 S.W.3d 839, 844 (Tex. App.—Texarkana 2013, no pet.).

**B. Analysis**

The Federal Arbitration Act (FAA or Act) applies to contracts involving interstate commerce. *See* 9 U.S.C. §§ 1, 2. As the United States Supreme Court recognized in *Southland Corp. v. Keating*, 465 U.S. 1, 10–12 (1984), the FAA, "establishes a national policy favoring arbitration when parties contract for that mode of dispute resolution." *Preston v. Ferrer*, 552 U.S. 346, 349 (2008); *see also* 9 U.S.C. §§ 1–402. Resting on Congress's authority under the Commerce Clause, the U.S. Supreme Court found the Act applied in state courts as well as federal courts. *Preston*, 552 U.S. at 349.

Relevant to this dispute, § 2 of the Act provides, in part, that:

4

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Despite this general provision, § 1 limits the enforceability of arbitration agreements by providing an exemption to mandatory arbitration for "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. Pertaining to this exemption, the U.S. Supreme Court has interpreted the phrase, "other class of workers," to be limited to transportation workers. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001). Here, neither party initially disputes the agreement at issue involves a "transaction involving commerce," which is covered by the FAA. Instead, the question before us is narrowed to asking whether Contreras qualifies as a transportation worker engaged in interstate commerce such that he is exempt from provisions of the FAA under the transportation worker exemption.

### (1) Whether the arbitration agreement qualifies as a contract of employment

We first determine whether the arbitration agreement is a contract of employment because the transportation worker exemption only applies when the arbitration agreement is a "contract of employment." 9 U.S.C. § 1; *W. Tex. Exp. v. Guerrero*, 511 S.W.3d 106, 112–13 (Tex. App.—El Paso 2014, no pet.) (holding that the transportation exemption did not apply because there was no employment contract). Arrow Freight argues the agreement is not a contract of employment because it includes a  provision stating as follows: "Not a Contract of Employment: Although this Arbitration Agreement alters the terms of your at-will employment with [Arrow Freight], it is not,

5

and shall not be construed to create, a contract of continued employment, either express or implied, for any person." We disagree.

First, whether an arbitration agreement is a contract of employment is not decided by whether it is labeled as such. Otherwise, it would be easy enough for employers to avoid the transportation worker exemption for *every* employee by simply including a sentence indicating the agreement is not a contract of employment. Second, the fact that Contreras was an at-will employee is also irrelevant. An at-will employee agreement can be considered an employment contract for the purposes of the transportation worker exemption. *In re Swift Transp. Co., Inc.*, 311 S.W.3d 484, 489 (Tex. App.—El Paso 2009, no pet.) (citing *Sterner v. Marathon Oil Company*, 767 S.W.2d 686, 689 (Tex. 1989)).

Instead, the more relevant inquiry is whether Contreras's agreement to arbitration was a condition of his employment. In *Swift*, we considered an arbitration agreement similar to the one at issue here. There, the agreement provided both, that it did not affect the employee's "at will" status, and further, by continuing to work for the employer, the employee agreed to the arbitration of covered disputes. *Id*. at 489. We held that the arbitration agreement was an employment contract because said arbitration was a condition of employment. *Id*. at 490; *Compare with West Texas Exp.*, 511 S.W.3d at 112–13 (employer's occupational benefit plan which included arbitration provisions was not a contract of employment because it was not mandatory). The same is true here. The arbitration agreement signed by Contreras specifically provided that, by continuing to work more than three days after receiving notice of the arbitration policy, Contreras was "deemed to have accepted the terms of [the] Arbitration Agreement."

Because Contreras did not have the option of both declining the agreement and continuing to work, we conclude the arbitration agreement was a condition of Contreras's employment, and thus, it was a contract of employment under the FAA.

**(2) Was Contreras a transportation worker engaged in interstate commerce?**

In determining whether an employee is a transportation worker for purposes of the FAA exclusion, this court has followed the U.S. Court of Appeals for the Eighth Circuit in *Lenz v. Yellow Transp., Inc.*, and applied a "nonexclusive eight-part test." *W. Dairy Transp., LLC v. Vasquez*, 457 S.W.3d 458, 465 (Tex. App.—El Paso 2014) (citing *Lenz v. Yellow Transp., Inc.*, 431 F.3d 348, 352 (8th Cir. 2005)). The factors of the *Lenz* test are (1) "whether the employee works in the transportation industry"; (2) "whether the employee is directly responsible for transporting the goods in interstate commerce"; (3) "whether the employee handles goods that travel interstate"; (4) "whether the employee supervises employees who are themselves transportation workers, such as truck drivers"; (5) "whether, like seamen or railroad employees, the employee is within a class of employees for which special arbitration already existed when Congress enacted the FAA"; (6) "whether the vehicle itself is vital to the commercial enterprise of the employer"; (7) "whether a strike by the employee would disrupt interstate commerce"; and (8) "the nexus that exists between the employee's job duties and the vehicle the employee uses in carrying out his duties." *Lenz*, 431 F. 3d 348, 352.

This multi-factor test has been applied to employees working in the transportation industry who are not engaged in the actual transportation of goods. *See, e.g., Lenz*, 431 F.3d at 352–53 (applying test to find that a customer-service representative for a transportation company was not a transportation worker); *W. Dairy Transp., LLC*, 457 S.W.3d at 465 (using the *Lenz* factors to determine that a mechanic was a transportation worker); *OEP Holdings LLC v. Akhondi*, 570

7

S.W.3d 774, 781–82 (Tex. App.—El Paso 2018) (using the *Lenz* factors to hold that an orientation instructor was a transportation worker). But here, on this record, we conclude we do not need to apply the multi-factor test to determine if Contreras was a transportation worker because, as a truck driver, he was "indisputably" a transportation worker for purposes of the Act. *W. Dairy Transp.*, 457 S.W.3d at 466 (noting that truck drivers are "indisputably" transportation workers for purposes of 9 U.S.C. § 1); *see also Lenz*, 431 F.3d at 351 ("Indisputably, if Lenz were a truck driver, he would be considered a transportation worker under § 1 of the FAA.").

The more pertinent question applicable here is whether he was engaged in interstate commerce. Arrow Freight characterizes Contreras's interstate dispatches as "rare and infrequent," contending, for this reason, he was not engaged in interstate commerce. It points out that his interstate trips accounted for only between .7% and 20.51% of his yearly dispatches after 2018.

Besides seamen and railroad workers, the FAA exempts from mandatory arbitration "any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. To determine if this exemption applies, we ask "not whether the *individual worker* actually engaged in interstate commerce, but whether *the class of workers to which the complaining worker belonged* engaged in interstate commerce." *Bacashihua v. U.S. Postal Serv.*, 859 F.2d 402, 405 (6th Cir. 1988) (emphasis added); *see also Sw. Airlines Co. v. Saxon*, 596 U.S. 450 (2022) (determining if a worker is engaged in interstate commerce based on "the actual work that the members of the class, as a whole, typically carry out"); *Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798, 801 (7th Cir. 2020) ("To determine whether a class of workers meets that definition [of a transportation worker engaged in interstate commerce], we consider whether the interstate movement of goods is a central part of the class members' job description."). If the class is engaged in interstate commerce, then all members of the class are so engaged even if they do not themselves personally transport

goods interstate. *See Capriole v. Uber Techs., Inc.*, 7 F.4th 854, 861 (9th Cir. 2021) (in analyzing whether the transportation worker exemption applies, it does not matter if the worker himself crosses state lines); *Waithaka v. Amazon.com, Inc.*, 966 F.3d 10, 22 (1st Cir. 2020) (if a class of workers is engaged in the interstate moving of goods, they are engaged in interstate commerce "even if the workers were responsible only for an intrastate leg of that interstate journey"); *Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 593 (3d Cir. 2004) (supervisor of interstate drivers was engaged in interstate commerce for the purposes of the transportation worker exemption even though she did not personally transport the goods).

Here, the record establishes that Arrow Freight was operating as a freight transportation company during the relevant time of the dispute. It was responsible for transporting goods to and from as many as 24 states. Even though Contreras himself and one other driver were primarily responsible for Texas routes only, this limitation does not change the fact that, as a whole, the *class* of truck drivers to which he belonged who all worked for Arrow Freight, were in fact engaged in interstate commerce.

We conclude that the cases Arrow Freight cites to in support of its argument are factually dissimilar and in any event their reasoning supports a finding that Contreras engaged in interstate commerce. In three of the cases cited, the courts' holdings that the transportation exemption did not apply were all made because the employees did not work in the transportation industry and the fact that they may have crossed state lines in the course of their work was incidental or happenstance. In *Mason v. Big Star Transit*, the court held that a rideshare driver was not engaged in interstate commerce because "interstate travel was not intrinsic to her job as a rideshare worker, and is not intrinsic to rideshare drivers as a class." *Mason v. Big Star Transit LLC*, No. 3:20-CV-03566-M, 2021 WL 4948214, at \*5 (N.D. Tex. Sept. 28, 2021). In *Rogers v. Lyft*, the court held

9

that rideshare drivers' "relationship to interstate transit is only casual and incidental." *Rogers v. Lyft, Inc.*, 452 F. Supp. 3d 904, 917 (N.D. Cal. 2020), aff'd, No. 20-15689, 2022 WL 474166 (9th Cir. Feb. 16, 2022) (quoting *United States v. Yellow Cab Co.*, 332 U.S. 218, 231 (1947), overruled on other grounds by *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752 (1984)). And, in *Hill v. Rent-A-Ctr*, the court held that an account manager for a rent-to-own business was not a transportation worker because the emphasis in the exemption "was on a class of workers in the transportation industry, rather than on workers who incidentally transported goods interstate as part of their job." *Hill v. Rent-A-Ctr., Inc.*, 398 F.3d 1286, 1289 (11th Cir. 2005). Here, in contrast, the fact that Arrow Freight's truck drivers moved goods interstate was not "incidental" to their work. That type of activity encompassed the very purpose of their business. Lastly, in the fourth case cited by Arrow Freight, *Wallace v. Grubhub*, the court held that workers who delivered food that itself may have moved across state lines to get to its final destination were not engaged in interstate commerce because they had no part in the last part of the transportation. *Wallace v. Grubhub Holdings, Inc.*, 970 F.3d at 802. But that is not the case here. Arrow Freight's truck drivers, as a class, were responsible for moving goods to and from other states, and not only moving goods after they arrived in state.

These same cases recognize that a truck driver like Contreras—who works in the transportation industry but whose routes are primarily intrastate—are still considered to be engaged in interstate commerce. "If a class of workers (say, truckers) transports goods or people between states, a trucker who only occasionally drives across state lines is still exempt from the FAA." *Rogers*, 452 F. Supp. 3d at 915; *see also Mason*, 2021 WL 4948214 at *5 (same); *Wallace*, 970 F.3d at 800 (recognizing that if a class of workers engages in interstate commerce, "a member of the class qualifies for the exemption even if she does not personally 'engage in commerce'").

10

Further, even if we define the class of workers narrowly, as Arrow Freight would have us do, so the class only includes Arrow Freight's two "local drivers," Contreras would still qualify as a transportation worker engaged in interstate commerce. For truck drivers in the transportation industry, the transportation exemption applies if *any* amount of their deliveries are interstate. For example, in *Kienstra Precast*, the truck drivers who were based in Illinois made between "1500 to 1750 deliveries each year, of which only a few dozen were to Missouri." *Int'l Brotherhood of Teamsters Local Union No. 50 v. Kienstra Precast LLC*, 702 F.3d 954, 958 (7th Cir. 2012). The Seventh Circuit Court held "there is no basis in the text of § 1 for drawing a line between workers who do a lot of interstate transportation work and those who cross state lines only rarely; both sorts of worker are 'engaged in foreign or interstate commerce.'" *Id.* (citing *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Cartage Co.*, 84 F.3d 988, 993 (7th Cir. 1996)).

Finally, Arrow Freight contends that Contreras was not engaged in interstate commerce because the bulk of his interstate destinations after 2018 were close to the Texas border.[2] The company, however, cites no support, and we find none, for the proposition that a certain distance across a state line is required for transportation to be considered interstate. Transportation of goods to another state is interstate transportation, regardless of whether the delivery is right across the border or many states away. *See, e.g. Kienstra Precast*, 702 F.3d at 956 (noting that if employees who typically delivered goods in Illinois occasionally delivered goods directly across the river to St. Louis, Missouri, the § 1 exemption would apply, and the court would not have jurisdiction).

---

[2] Specifically, Arrow Freight asserts that the farthest trip Contreras made once he became a local driver was a delivery to Santa Theresa, New Mexico, a town on the border with Texas. Arrow Freight's records, however, show, in the month before Contreras was allegedly injured, he travelled from Texas to Nogales and Douglas, Arizona.

Accordingly, we conclude that Contreras meets the two requirements of the exemption to mandatory arbitration under the FAA: he had a contract of employment with Arrow Freight that conditioned his continued employment on acceptance of the agreement, and he was a member of a class of workers engaged in interstate commerce. Because we hold that Contreras was exempt from mandatory arbitration under the transportation worker exemption of 9 U.S.C. § 1, we need not address whether the arbitration agreement itself excludes Contreras's claims. *See* TEX. R. APP. P. 47.1.

We overrule Arrow Freight's sole issue.

## CONCLUSION

We affirm the trial court's denial of Arrow Freight's motion to compel arbitration.


GINA M. PALAFOX, Justice

January 12, 2024

Before Alley, C.J., Palafox, and Soto, JJ.