*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*



# OPINION

No. 04-09-00310-CV

**J.B. HUNT TRANSPORT, INC.,**
Appellants

v.

Terri **HARTMAN**, et al.,
Appellees

From the 79th Judicial District Court, Jim Wells County, Texas
Trial Court No.08-02-46678, the Honorable Richard C. Terrell presiding

No. 04-09-00369-CV

**IN RE J.B. HUNT TRANSPORT, INC**.

Original Mandamus Proceeding[1]

Opinion by:     Sandee Bryan Marion, Justice

Sitting:          Sandee Bryan Marion, Justice
                 Phylis J. Speedlin, Justice
                 Marialyn Barnard, Justice

Delivered and Filed: January 20, 2010

APPEAL DISMISSED FOR LACK OF JURISDICTION; PETITION FOR WRIT OF
MANDAMUS CONDITIONALLY GRANTED

---

[1] This proceeding arises out of Cause No. 08-02-46678, styled *Terri Hartman, as next friend of Marissa Hartman, a minor, et al. v. Daimler Trucks North America, L.L.C. d/b/a Freightliner, L.L.C., et al.,* pending in the 79th Judicial District Court, Jim Wells County, Texas, the Honorable Richard C. Terrell presiding.

In these consolidated proceedings, J.B. Hunt Transport, Inc. ("J.B. Hunt") complains of the trial court's May 21, 2009 order denying its motion to compel arbitration. We dismiss J.B. Hunt's interlocutory appeal for lack of jurisdiction and conditionally grant the petition for writ of mandamus.

## BACKGROUND

The underlying dispute arose out of a wrongful death claim filed after Mr. Gary Pilat was killed in a car accident while driving a truck owned by J.B. Hunt, his employer. J.B. Hunt provided its employees a benefits plan, entitled "J.B. Hunt Texas Injury Benefit Plan Summary Plan Description" (hereinafter "Benefit Plan"). The Benefit Plan provides that in the event an employee dies as a result of an on the job injury, J.B. Hunt will pay the employee's beneficiary $100,000 in death benefits and will reimburse funeral expenses up to $6,000 to any one who incurs them. On June 2, 2004, Mr. Pilat signed the Benefit Plan. Included in the Benefit Plan is an arbitration agreement which provides as follows:

> All claims or disputes described below that cannot otherwise be resolved between the Company and you are subject to final and binding arbitration. This binding arbitration is the only method for resolving any such claim or dispute. . . .
>
> This arbitration requirement applies to: . . .
>
> [A]ny legal or equitable claim by or with respect to you for any form of physical or psychological damage, harm or death which relates to an accident, occupational disease, or cumulative trauma. . . .
>
> These provisions also apply to any claims that may be brought by your spouse, children, beneficiaries, representatives, executors, administrators, guardians, heirs or assigns.

On June 1, 2007, Terri Hartman, individually and as next friend of Marissa Hartman, a minor child, filed suit in Bexar County against J.B. Hunt. The parties do not dispute that the only purpose of this first suit was to seek approval from the trial court for the payment of death benefits and funeral expenses under the Benefit Plan. The parties entered an agreed judgment, which ordered the death benefits to be paid to Mr. Pilat's minor daughter, Marissa Hartman. Then, on February 7, 2008, Terri Hartman, as next friend of Marissa Hartman, a minor, and Marlene Hartman, as Executrix of the Estate of Gary Pilat, deceased, filed a second suit in Jim Wells County, which named as defendants Daimler Trucks North America, L.L.C., J.B. Hunt, and Claudio Barrera, III. Plaintiffs subsequently filed an amended petition, indicating that only Marissa Hartman (hereinafter "Hartman") is seeking to recover damages for the wrongful death of her father and the Estate of Gary Pilat is not bringing any claims against J.B. Hunt in the lawsuit because of the signed arbitration agreement.

J.B. Hunt filed its original answer on May 12, 2008, indicating that it is "subject to, and without waiving, its right to compel arbitration of all or any part of this case." On June 3, 2008, J.B. Hunt filed a plea to the jurisdiction and motion to stay proceedings or discovery, which sought to have the case dismissed on the following grounds: (1) standing; (2) election of remedies; (3) estoppel; (4) mootness; (5) res judicata; and (6) an agreed settlement.[2] On August 28, 2008, the trial

---

[2] At the outset, the plea to the jurisdiction provided that it is "Subject to, and without waiving, its right to arbitrate." In addition, the plea contained a section entitled "J.B. Hunt Preserves its Arbitration Rights," which specifically provides: (1) "Far from substantially invoking the judicial process, J.B. Hunt seeks to avoid litigation altogether"; (2) "By pursuing dismissal, J.B. Hunt has not jeopardized its right to compel arbitration under the Federal Arbitration Act"; (3) "Nor can anyone prove an 'unequivocal' waiver, especially because J.B. Hunt has expressly reserved its right to arbitrate throughout." Additionally, J.B. Hunt's reply to plaintiffs' response to J.B. Hunt's plea to the jurisdiction specifically asserts "Marissa must arbitrate her claim, a defense disputed by Plaintiffs," and gives supporting arguments for such an assertion. Hartman contends that at the hearing on the plea to the jurisdiction, plaintiffs brought up the arbitration issue, but J.B. Hunt advised the court that the issue "may be reserved for another day."

court denied J.B. Hunt's plea to the jurisdiction. Since the inception of the suit, various discovery has been conducted that we will address later in this opinion.

On December 5, 2008, all parties agreed to continue the April 2009 trial setting. Then on February 13, 2009, *In re Labatt Food Service, L.P.*, 279 S.W.3d 640 (Tex. 2009) issued, mandating arbitration of wrongful death claims brought by non-signatories against an employer. Shortly after *In re Labatt* issued, counsel for Hartman wrote an email to counsel for J.B. Hunt, proposing to enter into an agreement to jointly submit the disputes to arbitration and dismiss J.B. Hunt from the lawsuit. Counsel for J.B. Hunt responded in part that "the only viable arbitration claims that remain are JB Hunt's action for attorney fees incurred in connection with the wrongful lawsuit and JB Hunt's claim for subrogation." A series of emails between counsel ensued on this issue. Then, on April 1, 2009, J.B. Hunt filed a motion to compel arbitration against plaintiffs and intervenors. The Estate of Gary Pilat has never contested arbitration, and only Hartman responded to the motion to compel arbitration. Therefore, the only issue before the trial court was whether Hartman was compelled to arbitrate her claims against J.B. Hunt. Hartman asserted the defense of waiver to the motion to compel arbitration, alleging J.B. Hunt had substantially invoked the judicial process. On May 4, 2009, the trial court held a hearing on the motion to compel arbitration, and on May 21, 2009 entered an order denying the motion. The trial court did not enter any findings of fact or conclusions of law. J.B. Hunt filed an interlocutory appeal and a petition for writ of mandamus.

## ANALYSIS

### A.   Mandamus or Interlocutory Appeal

As a preliminary matter, we first address whether this court has jurisdiction over the interlocutory appeal and petition for writ of mandamus. In its motion to compel arbitration, J.B.

Hunt sought to compel arbitration under the Federal Arbitration Act (hereinafter "FAA"), and/or the Texas Arbitration Act (hereinafter "TAA"), and/or alternatively under Texas common law. However, the arbitration agreement upon which J.B. Hunt relies to compel arbitration provides that "the [FAA] will govern the interpretation, enforcement, and proceedings under this arbitration requirement."

When there is an express agreement to arbitrate under the FAA, we have upheld such choice-of-law provisions regardless of whether the transaction at issue involves interstate commerce. *See Teel v. Beldon Roofing & Remodeling Co.*, 281 S.W.3d 446, 449 (Tex. App.—San Antonio 2007, pet. denied). As a result, because J.B. Hunt and Mr. Pilat specifically agreed to arbitrate any claims under the FAA, we dismiss J.B. Hunt's interlocutory appeal for lack of jurisdiction and only consider the petition for writ of mandamus.[3]

## B. Valid Arbitration Agreement

Mandamus will issue only to correct a clear abuse of discretion for which the relator has no adequate remedy at law. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135 (Tex. 2004) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839-40 (Tex. 1992) (orig. proceeding). A trial court has no discretion in determining what the law is or in applying the law to the facts, and a clear failure to analyze or apply the law correctly will constitute an abuse of discretion. *Walker*, 827 S.W.2d at 840. When a motion to compel arbitration under the FAA has been erroneously denied, there is no

---

[3] Section 51.016 of the Texas Civil Practice and Remedies Code provides that "[i]n a matter subject to the [FAA], a person may take an appeal or writ of error to the court of appeals from the judgment or interlocutory order of a district court, county court at law, or county court under the same circumstances that an appeal from a federal district court's order or decision would be permitted by 9 U.S.C. Section 16." TEX. CIV. PRAC. & REM. CODE § 51.016 (Vernon Supp. 2009). However, section 51.016 only applies to an appeal initiated on or after September 1, 2009. *Id.* Because the proceedings in this court were initiated prior to the effective date of section 51.016, this provision is not applicable to the case at hand, and the petition for writ of mandamus is the appropriate vehicle for this court to consider J.B. Hunt's complaint.

adequate remedy at law and mandamus will issue. *In re D. Wilson Const. Co.*, 196 S.W.3d 774, 780 (Tex. 2006) (orig. proceeding).

A party seeking a petition for writ of mandamus to compel arbitration under the FAA must: (1) establish the existence of a valid arbitration agreement; and (2) show that the claims asserted are within the scope of the agreement. *See In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 607 (Tex. 2005) (orig. proceeding). When, as here, a party resists arbitration, the trial court must determine whether a valid agreement to arbitrate exists. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). The trial court's determination as to the validity of an arbitration agreement is subject to *de novo* review. *Id.* Although there is a strong presumption favoring arbitration, that presumption arises only after the party seeking to compel arbitration proves a valid arbitration agreement exists. *Id.* Under both the FAA and the TAA, we apply ordinary state contract law principles in order to decide whether a valid arbitration agreement exists. *See In re D. Wilson Constr. Co.*, 196 S.W.3d at 781 (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

Following the Texas Supreme Court's decision in *In re Labatt*, wrongful death claims brought by non-signatories against an employer must be arbitrated if there was an agreement to arbitrate between the employee and the employer. 279 S.W.3d at 643-46. In her response to the motion to compel arbitration filed in the trial court, Hartman acknowledged that in light of *In re Labatt*, "the Plaintiffs do not contest the validity of the respective arbitration clause as to Marissa Hartman." However, in this court Hartman now contests the validity of the arbitration agreement as follows: (1) section 1 of the FAA exempts contracts of employment of seamen, railroad employees or any other class of workers engaged in foreign or interstate commerce; (2) section

406.033(e) of the Texas Labor Code renders the arbitration agreement void and unenforceable; and (3) the Benefit Plan was illusory and not supported by consideration.

### 1.    FAA Exemption

Hartman asserts section 1 of the FAA exempts Mr. Pilat from the coverage of the FAA. *See* 9 U.S.C. § 1. Section 1 of the FAA provides that the Act does not apply to "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." *Id.* J.B. Hunt contends this issue was not preserved for our review because Hartman did not present it to the trial court. We agree. An order that denies a motion to compel arbitration must be upheld by this court if it is proper on any basis considered by the trial court. *See In re Weeks Marine, Inc.*, 242 S.W.3d 849, 854 (Tex. App.—Houston [14th Dist.] 2007, orig. proceeding [mand. denied]); *see also In re Bristol-Myers Squibb Co.*, 975 S.W.2d 601, 605 (Tex. 1998) (orig. proceeding) (holding that appellate review is limited to the record and issues the trial court considered when it ruled on the motion). The issue of whether section 1 of the FAA exempts Mr. Pilat from coverage was never presented to the trial court. Therefore, we conclude this issue was not preserved for our review.

### 2.    Labor Code

Hartman further asserts that Texas Labor Code section 406.033(e), which prohibits pre-injury waivers of personal injury or death claims, renders the arbitration agreement void and enforceable. J.B. Hunt again asserts this issue was not preserved for our review because Hartman did not present

it to the trial court. We agree. *See In re Weeks Marine, Inc.*, 242 S.W.3d at 854; *see also In re Bristol-Myers Squibb Co.*, 975 S.W.2d at 605.[4]

### 3.      Illusory and Not Supported by Consideration

Next, Hartman asserts the language in the "Funding" section of the Benefit Plan renders the entire Benefit Plan illusory. As the Court in *In re Labatt* provided, "[t]here are two types of challenges to an arbitration provision: (1) a specific challenge to the validity of the arbitration agreement or clause, and (2) a broader challenge to the entire contract, either on a ground that directly affects the entire agreement, or on the ground that one of the contract's provisions is illegal and renders the whole contract invalid." 279 S.W.3d at 647-48. The case at hand presents the second type of challenge: a broad challenge to the entire contract on the ground that the "Funding" provision is illusory, and, therefore, there is no binding contract. "[U]nless a challenge is to the arbitration clause or arbitration agreement itself, . . . the question of a contract's validity is for the arbitrator and not the courts." *Id.* at 649. Therefore, we do not address Hartman's assertion that the funding section of the Benefit Plan is illusory because this issue must be decided by the arbitrator.

As a result of the foregoing, we conclude there was a valid arbitration agreement between Mr. Pilat and J.B. Hunt. In addition, the parties do not dispute the claims asserted by Hartman are within the scope of the arbitration agreement. Therefore, Hartman's wrongful death claims against J.B. Hunt must be arbitrated unless Hartman establishes a valid defense to enforcing the arbitration agreement.

---

[4] However, even if this issue was preserved, on November 20, 2009 the Texas Supreme Court directly addressed the issue of whether section 406.033(e) renders an arbitration agreement void and held it does not. *See In re Golden Peanut Co., LLC*, No. 09-0122, 2009 WL 3969428, at *2 (Tex. Nov. 20, 2009) (orig. proceeding).

## C.  Waiver by Substantially Invoking the Judicial Process

Once a valid arbitration agreement has been established, a presumption attaches favoring arbitration and the burden shifts to the party resisting arbitration to establish a defense to enforcing arbitration. *See In re AdvancePCS*, 172 S.W.3d at 607; *In re Hartigan*, 107 S.W.3d 684, 687-88 (Tex. App.—San Antonio 2003, orig. proceeding [mand. denied]). The only defense to the arbitration agreement asserted by Hartman in the trial court was waiver.

A party waives arbitration by substantially invoking the judicial process to the other party's detriment. *Perry Homes v. Cull*, 258 S.W.3d 580, 589-90 (Tex. 2008). "Due to the strong presumption against waiver of arbitration, this hurdle is a high one." *Id.* at 590. Up until *Perry*, the Texas Supreme Court had never found such a waiver. *Id.* The Court held that "a party who enjoys substantial direct benefits by gaining an advantage in the pretrial litigation process should be barred from turning around and seeking arbitration with the spoils." *Id.* at 593. The Court concluded that "in close cases, the 'strong presumption against waiver' should govern." *Id.* (quoting *In re D. Wilson*, 196 S.W.3d at 783). Whether a party has waived its right to arbitration is a question of law that we review *de novo*, giving no deference to the trial court's ruling. *Id.* at 598.

The Texas Supreme Court has taken the federal court approach to waiver by adopting the "totality of the circumstances" analysis. *Id.* at 590-91. The Court acknowledged in *Perry* that like federal courts, it has considered factors such as:

> (1) when the movant knew of the arbitration clause;
> (2) how much discovery has been conducted;
> (3) who initiated the discovery;
> (4) whether it related to the merits rather than arbitrability or standing;
> (5) how much of it would be useful in arbitration; and
> (6) whether the movant sought judgment on the merits.

*Id.* at 591-92. "Merely taking part in litigation is not enough unless a party has substantially invoked the judicial process to its opponent's detriment." *In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 763 (Tex. 2006).

In the trial court, Hartman asserted J.B. Hunt substantially invoked the judicial process by: (1) filing multiple motions to quash the depositions of J.B. Hunt employees; (2) noticing and deposing a co-defendant, Claudio Domingo Barrera; (3) actively participating in at least thirteen depositions (producing seven J.B. Hunt employees, attending other depositions, and cross-noticing depositions); (4) participating in the submission of an agreed motion for continuance; (5) waiting fourteen months from the date the case was filed to file the motion to compel arbitration; (6) when plaintiff brought up the issue of arbitration at the plea to the jurisdiction hearing, J.B. Hunt stated that the issue of arbitration was not before the court; (7) requesting numerous extensions of written discovery deadlines; (8) actively participating in pushing back the trial date; (9) refusing to sign a confidentiality order and an order on plaintiffs' discovery; (10) propounding requests for disclosure and a deposition on written questions to Texas Department of Transportation; (11) filing a plea to the jurisdiction which was denied following a hearing; and (12) failing to agree to arbitration when plaintiffs' counsel emailed J.B. Hunt's counsel. In addition, in her brief to this court, Hartman notes several times where J.B. Hunt filed motions to quash depositions, motions for protective orders, and objections to the notice of various oral depositions.

J.B. Hunt asserts it only propounded minimal discovery and at all times reserved its right to seek arbitration. J.B. Hunt agrees it knew of the arbitration provision, but because the Supreme Court had not yet ruled on *In re Labatt*, J.B. Hunt refrained from seeking to compel arbitration until

after the Supreme Court issued its opinion. Other than answering discovery and cross-noticing depositions, J.B. Hunt has conducted little discovery of its own. Most of the discovery was initiated by plaintiffs. In addition, unlike the situation in *Perry* when the Supreme Court determined there was waiver, the case at hand is not one in which the parties have waited until the eve of trial after all or the majority of the discovery has been completed to compel arbitration. *Perry*, 258 S.W.3d at 595-596. We conclude J.B. Hunt did not waive its right to compel arbitration by substantially invoking the judicial process. Due to this finding, we do not reach the issue of whether Hartman was prejudiced.[5]

## CONCLUSION

We conclude the trial court erred in denying J.B. Hunt's motion to compel arbitration. Accordingly, we dismiss J.B. Hunt's interlocutory appeal for lack of jurisdiction and conditionally grant the petition for writ of mandamus. The writ will issue only if the trial court fails to withdraw its May 21, 2009 order denying J.B. Hunt's motion to compel arbitration and enter an order compelling arbitration within ten days.

Sandee Bryan Marion, Justice

---

[5] We acknowledge as a result of the *In re Labatt* opinion the law changed during the pendency of Hartman's case in the trial court. *See* 279 S.W.3d at 643-46. However, because we have concluded J.B. Hunt did not substantially invoke the judicial process we are unable to reach the issue of prejudice.