

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-23-00035-CV

———————————————

J.B. HUNT TRANSPORT, INC., Appellant

V.

KIM LESTER, Appellee

---

On Appeal from the 415th District Court
Parker County, Texas
Trial Court No. CV22-1664

---

Before Sudderth, C.J.; Birdwell and Womack, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

### I. INTRODUCTION

In one issue, Appellant J.B. Hunt Transport, Inc. appeals the denial of its motion to compel arbitration of personal injury claims by Appellee Kim Lester, an employee of J.B. Hunt who was driving a tractor trailer "in tandem" with another employee-driver but who was resting when her injuries occurred. We will reverse and remand.

### II. BACKGROUND

On November 3, 2020, Lester was an employee of J.B. Hunt, but as alleged in her pleadings, "was not on the clock or within the course and scope of her employment" because her shift had ended and Brian McCarthy had "swapped positions as driver and operator of the tractor trailer and assumed the role of driver." Shortly after McCarthy began driving and Lester had moved to the sleeping compartment, McCarthy performed a "hard br[ake]," causing Lester "to fly forward and collide with the metal barrier between the driving area and the resting area." Almost two years later, Lester filed suit against J.B. Hunt and McCarthy[1] for her injuries.

J.B. Hunt answered the lawsuit and filed a plea in abatement and motion to compel arbitration. Attached to the motion were the "relevant page[s]" of the "J.B.

---

[1]McCarthy is neither a party to this appeal nor a party to the underlying motion to compel arbitration.

Hunt Texas Injury Benefit Plan" (the Plan). It contained what purported to be the signatures of Lester and an unidentified person representing J.B. Hunt. The Plan required that arbitration be administered by the American Arbitration Association (AAA) and that the Federal Arbitration Act (FAA) "govern the interpretation, enforcement, and proceedings under the arbitration provisions of [the] Plan."

As relevant to this appeal, the Plan contained the following provisions:

> The Employer hereby adopts a mandatory company policy requiring that the following claims or disputes must be submitted to final and binding arbitration under this Appendix: . . . any legal or equitable claim by or with respect to an Employee for any form of physical or psychological damage, harm or death which relates to an accident, occupational disease, or cumulative trauma . . . .

> The determination of whether a claim is covered by this Appendix shall also be subject to arbitration under this Appendix. Neither an Employee nor an Employer shall be entitled to a bench or jury trial on any claim covered by this Appendix. . . . This binding arbitration will be the sole and exclusive remedy for resolving any such claim or dispute.

> . . . .

> The arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this agreement including, but not limited to, any claim that all or any part of this agreement is void or voidable.

In the paragraph before the signature lines, the signer acknowledged that the plan included a mandatory company policy requiring that "claims or disputes relating to the cause of an on-the-job injury" be submitted to an arbitrator. Two sentences before the signature lines and in bold type were the following words: "I understand

3

that the arbitrator, and not a judge or jury, has the exclusive authority to resolve any dispute about the enforceability of this arbitration."

In her response to the motion, Lester argued that her claims did not fall within the scope of the arbitration agreement because she was not within the course and scope of her employment at the time of her injuries. To support her argument, she pointed to the definition of "Course and Scope of Employment" contained in the Plan: "an activity of any kind or character for which the Participant was hired and that has to do with, and originates in, the work, business, trade or profession of an Employer, and that is performed by a Participant in the furtherance of the affairs or business of an Employer." According to the Plan, the term does not include "any injury occurring before the Participant clocks in or otherwise begins work for an Employer or after the Participant clocks out or otherwise ceases work for an Employer." Also in her response, Lester noted that, had J.B. Hunt accepted her claim for benefits under the Plan, she may not have needed to file suit. The only evidence attached to her response was a letter from the Plan's administrator denying Lester's claim for benefits. The letter stated that benefits were denied (1) for failure to timely report the injury as required by the Plan and (2) for insufficient evidence to support an accident or injury in the course and scope of employment.

At the non-evidentiary hearing on the motion,[2] Lester did not challenge the validity of the agreement. Rather, she referred to the letter attached to her response and argued that, based on the denial of benefits under the Plan, arbitration was not required. Lester's attorney also noted that "to protect the statute of limitations, a concurrent arbitration" had been filed with the AAA. J.B. Hunt argued that Lester did not contest the arbitration agreement and that the only issue before the court was determining whether the claim fell within the scope of the arbitration agreement. Further, J.B. Hunt asserted that the trial court did not have the authority to make the scope determination as that issue should be sent to arbitration. At the conclusion of the hearing, the trial court took the matter under advisement. Later, the trial court signed an order denying the plea in abatement and the motion to compel arbitration. J.B. Hunt appeals from that order. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 51.016, 171.098(a)(1); *see also* 9 U.S.C. § 16(a)(1)(B), (C).

### III. DISCUSSION

In one issue, J.B. Hunt complains that the trial court erred in denying its motion to compel arbitration "because the trial court's order permits Lester to

---

[2]Whether or not an evidentiary hearing should be held depends on the circumstances. *In re MP Ventures of S. Tx., Ltd.*, 276 S.W.3d 524, 528 n.4 (Tex. App.—San Antonio 2008, orig. proceeding). If material facts are uncontroverted, the trial court may decide whether to compel arbitration based on the affidavits, pleadings, discovery, and stipulations. *Id. (*citing *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 269 (Tex. 1992) (orig. proceeding)). The trial court is only required to hold a hearing to resolve disputed facts. *Id.*

continue to litigate her claims in derogation of a broadly-worded, mandatory arbitration provision" in the Plan.

## A. Standard of Review

We review a trial court's decision to deny a motion to compel arbitration for abuse of discretion. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

A party seeking to compel arbitration bears the burden to establish (1) the existence of a valid arbitration agreement and (2) that the disputed claims fall within the scope of that agreement. *Wagner v. Apache Corp.*, 627 S.W.3d 277, 284 (Tex. 2021); *see J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003); *see also Lennar Homes of Tex. Land & Constr., Ltd. v. Whiteley*, No. 21-0783, 2023 WL 3398584, at *5 (Tex. May 12, 2023). If the party seeking arbitration meets its two-pronged burden to establish the agreement's validity and scope, then the burden shifts to the party opposing arbitration to raise a valid defense to the agreement's enforcement, and absent evidence supporting such a defense, the trial court must compel arbitration. *J.M. Davidson, Inc.*, 128 S.W.3d at 227–28.

A trial court's determinations as to whether a valid arbitration agreement exists and whether the claims fall within the scope of an arbitration agreement are legal determinations subject to de novo review. *In re Labatt Food Serv., L.P.*, 279 S.W.3d

6

640, 643 (Tex. 2009) (orig. proceeding).  Similarly, all "gateway matters" are questions of law that we review de novo.  *Lennar Homes of Tex. Land & Constr., Ltd.*, 2023 WL 3398584, at *5.

Because the trial court here did not enter specific findings of fact or conclusions of law to explain its denial of the motion to compel arbitration, we infer that the trial court made all necessary findings to support its ruling.  *Kmart Stores of Tex., L.L.C. v. Ramirez*, 510 S.W.3d 559, 565 (Tex. App.—El Paso 2016, pet. denied).  And, because no findings or conclusions were entered, "we must uphold the trial court's decision on any appropriate legal theory *urged below*."  *APC Home Health Servs., Inc. v. Martinez*, 600 S.W.3d 381, 389 (Tex. App.—El Paso 2019, no pet.) (emphasis added).  "Yet, as a corollary, we are limited to considering the grounds presented to the trial court by the party resisting arbitration."  *Id.*

## B.  Analysis

In its initial appellate brief, J.B. Hunt confines its arguments to those made at the trial court, namely that Lester's claims "fall within the broad language of the arbitration clause," and more fundamentally, that the issue as to whether her claims fall within the scope of the arbitration provision should have been sent to the arbitrator.  In response, Lester raises several arguments that were neither in her response to the motion to compel arbitration nor in her arguments at the hearing below, including the following: (1) the "contract was improperly formed" because the Plan's signature line for J.B. Hunt contains an illegible signature and fails to state that

7

person's position with J.B. Hunt; (2) under a state law analysis, no valid arbitration contract was ever formed because the contract did not show that each party and its attorney signed the agreement as required by Texas Civil Practice and Remedies Code Section 171.002(c); and (3) under a federal law analysis, an interstate truck driver like Lester cannot be compelled to arbitrate her claims under 9 U.S.C. § 1. In its reply brief, J.B. Hunt argues that all of Lester's appellate arguments, with the exception of the scope argument and the right to delegate that issue to the arbitrator, cannot be considered due to Lester's failure to present them to the trial court. We will address these issues in turn as necessary to the disposition of this appeal.

## 1. Did J.B. Hunt meet its burden to establish the existence of a valid arbitration agreement?

Because arbitration is a matter of contract, courts must first decide whether a valid arbitration agreement exists. *See TotalEnergies E&P USA, Inc. v. MP Gulf of Mexico, LLC*, No. 21-0028, 2023 WL 2939648, at *19 (Tex. Apr. 14, 2023) (citing *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019)). As the party seeking arbitration, the burden was on J.B. Hunt to establish the existence of a valid arbitration agreement. *See Henry*, 551 S.W.3d at 115.

J.B. Hunt attached to its motion a copy of the Plan containing the arbitration agreement which was purportedly signed by Lester and an individual on behalf of J.B. Hunt. In the Plan, the parties agreed that "any legal or equitable claim by or with respect to an Employee for any form of physical or psychological damage, harm or

8

death which relates to an accident, occupational disease, or cumulative trauma" would be submitted to "final and binding arbitration." The Plan also stated that neither party "shall be entitled to a bench or jury trial on any claim covered" by the Plan. Further, "[t]he arbitrator, and not any federal, state, or local court or agency" has the "exclusive authority to resolve any dispute" regarding the agreement or the "enforceability of this arbitration."

Generally, a "written arbitration agreement is prima facie valid and must be enforced unless the opposing party . . . 'allege[s] and prove[s] that the arbitration clause itself was a product of fraud, coercion, or such grounds as exist at law or in equity for the revocation of the contract.'" *Knox Waste Serv., LLC v. Sherman*, No. 11-19-00407-CV, 2021 WL 4470876, at *2 (Tex. App.—Eastland Sept. 30, 2021, no pet.) (mem. op.) (quoting *Freudensprung v. Offshore Tech., Servs., Inc.*, 379 F.3d 327, 341 (5th Cir. 2004) (internal quotations omitted)). In addition, the uncontested existence of the non-movant's signature on an arbitration agreement meets the evidentiary standard necessary to prove the prima facie existence of an arbitration agreement. *APC Home Health Servs, Inc.*, 600 S.W.3d at 390.

On appeal, Lester argues that "the signature line labeled 'For the Employer' contains an illegible signature and does not identify the signer, their position with J.B. Hunt, or any indication that the signer has the authority to bind J.B. Hunt." Therefore, Lester contends that J.B. Hunt failed to show prima facie evidence of a valid arbitration agreement between the parties. However, this argument was not

raised in the trial court. Therefore, it cannot be considered on appeal. *See* Tex. R. App. P. 33.1(a)(1) ("As a prerequisite to presenting a complaint for appellate review, the record must show that . . . the complaint was made to the trial court . . . ."); *see also Pirtle v. Gregory*, 629 S.W.2d 919, 920 (Tex. 1982) (stating that a party "should not be permitted to waive, consent to, or neglect to complain about an error at trial and then surprise his opponent on appeal by stating his complaint for the first time"). Even if it was not waived for failure to present it to the trial court, the supreme court has "never held that the employer must sign the arbitration agreement before it may insist on arbitrating a dispute with its employee." *In re Polymerica, LLC*, 296 S.W.3d 74, 76 (Tex. 2009) (orig. proceeding); *In re AdvancePCS Health, L.P.*, 172 S.W.3d 603, 606 (Tex. 2005) (orig. proceeding) ("[N]either the FAA nor Texas law requires that arbitration clauses be signed, so long as they are written and agreed to by the parties.").

J.B. Hunt attached the "relevant page[s]" of the Plan to its motion to compel.[3] Lester does not dispute that she signed the document. Therefore, J.B. Hunt's signed copy of the arbitration agreement contained within the Plan established a prima facie valid arbitration agreement and satisfied J.B. Hunt's initial burden in seeking

---

[3]On appeal, in her Statement of Facts, Lester for the first time states that "the record does not contain the whole contract (the Plan), only excerpts." To the extent that this can be interpreted as an argument supporting the trial court's ruling, the argument was never raised before the trial court and cannot be considered on appeal. *See* Tex. R. App. P. 33.1(a).

10

arbitration. *See Wagner*, 627 S.W.3d at 284; *see also In re DISH Network, L.L.C.*, 563 S.W.3d 433, 439 (Tex. App.—El Paso 2018, orig. proceeding).

## 2. Did J.B. Hunt meet its burden to establish that the disputed claims fell within the scope of that agreement?

After establishing the existence of a valid arbitration agreement, it was J.B. Hunt's next burden to establish that the claims at issue fell within the scope of that agreement. *See Henry*, 551 S.W.3d at 115; *see also TotalEnergies*, 2023 WL 2939648, at *19.

The scope of arbitration issue was recently discussed by the Texas Supreme Court. In *TotalEnergies*, the court addressed a dispute over whether the parties' contracts required them to resolve their controversies through arbitration and whether they agreed that an arbitrator, rather than the courts, must resolve that dispute. *TotalEnergies*, 2023 WL 2939628, at *1. In resolving the case, the court first noted:

> A dispute over whether parties agreed to resolve their controversies through arbitration—referred to as a dispute over the controversies' "arbitrability"—typically encompasses three distinct disagreements: (1) the merits of the underlying controversy [ ]; (2) whether the merits must be resolved through arbitration instead of in the courts; and (3) who (a court or the arbitrator) decides the second question.

*Id.* at *4 (citing *RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 120 (Tex. 2018)). The court stated that "[t]he second question must be answered before the first, but the third must be answered before the second." *Id.* Therefore, the court began with the third question. *Id.*

11

We too begin with the third question. In the Plan at issue here, the agreement expressly provided that the "determination of whether a claim is covered" by the Plan "shall also be subject to arbitration." Further, the "arbitrator, and not any federal, state, or local court or agency" has the "exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation" of the agreement. Finally, any arbitration under the Plan "will be administered by the [AAA] under its then-current Employment Arbitration Rules and Mediation Procedures." Rule 6(a) of the AAA Employment Rules states, "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." Am. Arb. Ass'n, *Employment Arbitration Rules & Mediation Procedures* Rule 6(a) (2023), http://adr.org/sites/default/files/EmploymentRules-Web.pdf.

Lester argues that her claims do not fall within the scope of the arbitration agreement because they are not based on work-related injuries as she was off the clock and not within the course and scope of her employment when she was injured. To support her argument, Lester refers to the letter from the Plan's administrator denying Lester's claim for benefits. However, as noted by J.B. Hunt, the "scope of the Plan benefits for injuries and the scope of the arbitration clause are not coextensive"; rather, they are different. Regardless of the scope of the Plan benefits, the arbitration provision applies to "any legal or equitable claim by or with respect to

12

an Employee for any form of physical or psychological damage, harm or death which relates to an accident, occupational disease, or cumulative trauma."

In *TotalEnergies*, the court held that it "agree[d] with the vast majority of courts that, as a general rule, an agreement to arbitrate in accordance with the AAA or similar rules constitutes a clear and unmistakable agreement that the arbitrator must decide whether the parties' disputes must be resolved through arbitration." *TotalEnergies*, 2023 WL 2939648, at *10. The court also explained that it "need not decide whether the arbitration agreement [was] 'sufficiently' broad, however, because . . . any limitation contained within these parties' arbitration agreement d[id] not affect the agreement's clear and unmistakable delegation of arbitrability issues to the arbitrator." *Id.* at *12. And, while one party argued that the parties had "agreed to arbitrate only certain controversies and carved out others," *id.*, the court rejected this argument because it "ignore[d] the severability rule and conflate[d] the parties' agreement to arbitrate disputes with their agreement to delegate arbitrability issues to the arbitrator." *Id.* at *14.

Here, the parties not only expressly referred to arbitrability pursuant to the AAA but also specifically delegated the scope issue to the arbitrator. Further, the AAA rules require the arbitrator to rule on any objections "with respect to the existence, scope or validity of the arbitration agreement." Am. Arb. Ass'n, *Employment Arbitration Rules & Mediation Procedures* Rule 6(a) (2023), http://adr.org/sites/default/files/EmploymentRules-Web.pdf. Therefore, similar to

13

the *TotalEnergies* arbitration agreement, objections "with respect to the existence, scope or validity of the arbitration agreement" between J.B. Hunt and Lester were delegated to the arbitrator. *TotalEnergies*, 2023 WL 2939648, at *3, *5, *10. We conclude that the parties here have "clearly and unmistakably" delegated the arbitrability issue to the arbitrator.[4] *See id.* at *19.

---

[4]In her appellate brief, Lester contends that "[t]o coerce the parties to arbitrate what they have not agreed to arbitrate would fly in the face of fairness," and, under the doctrine of estoppel or quasi-estoppel, "a party seeking benefits from a contract cannot also avoid the burdens of a contract." While Lester states that she made this argument below, it was only in her written response and was contained within her "course and scope" argument, where she stated that J.B. Hunt should be "estopped from taking the polar opposite position that [Lester's] claims [were] within the course and scope of employment after all and must therefore be subject to arbitration." Lester cited no authority below in support of this argument, and she did not raise it at the hearing on the motion to compel arbitration. Nevertheless, we have previously determined that whether certain claims are barred by res judicata should be referred to the arbitrator. *Robinson v. Home Owners Mgmt. Enters., Inc.*, No. 02-20-00215-CV, 2021 WL 924839, at *16 (Tex. App.—Fort Worth Mar. 11, 2021, pet. denied) (mem. op.). In making that decision, we relied on both United States Supreme Court and Texas Supreme Court precedent. *See id.* at *5 (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84, 123 S. Ct. 588, 592 (2002) (stating that "issues of substantive arbitrability . . . are for a court to decide[,] and issues of procedural arbitrability, *i.e.*, whether prerequisites such as time limits, notice, laches, *estoppel*, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide") (emphasis added); and *G.T. Leach Builders, L.L.C. v. Sapphire V.P., LP*, 458 S.W.3d 502, 521 (Tex. 2015) (stating that courts presume that the parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration, including "the satisfaction of 'prerequisites such as time limits, notice, laches, *estoppel*, and other conditions precedent to an obligation to arbitrate'") (emphasis added) (quoting *BG Grp., PLC v. Republic of Argentina*, 572 U.S. 25, 34–35, 134 S. Ct. 1198, 1206–07 (2014))). Similarly, we conclude here that any procedural matter relating to estoppel or quasi-estoppel should be decided by the arbitrator.

**3. Were Lester's appellate arguments waived because she failed to present them to the trial court?**

Once the questions of validity and scope are resolved affirmatively, the court then considers whether any statute or policy renders the claims nonarbitrable. *See In re W. Dairy Transp.*, 457 S.W.3d 467, 471 (Tex. App.—El Paso 2014, no pet.). The party seeking to invalidate an arbitration agreement bears the burden of proof on these matters. *Id.*

As noted above, on appeal Lester presents two arguments not presented to the trial court: (1) under a federal law analysis, an interstate truck driver like Lester cannot be compelled to arbitrate her claims under 9 U.S.C. § 1,[5] and (2) under a state law analysis, no valid arbitration contract was ever formed because the contract did not show that each party and its attorney signed the agreement as required by Texas Civil Practice and Remedies Code Section 171.002(c).

Because of these new arguments, we must initially answer the question whether Lester has preserved them for our review. As a general rule, a party is required to present a complaint to the trial court before being allowed to raise the complaint on appeal. *See* Tex. R. App. P. 33.1; *All Am. Excavation, Inc. v. Austin Materials, LLC*, No. 04-15-000779-CV, 2016 WL 1464409, at *4 (Tex. App.—San Antonio Apr. 13,

---

[5]The FAA does not apply "to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1; *see Circuit City Stores v. Adams*, 532 U.S. 105, 112, 121 S. Ct. 1302, 1307 (2001).

2016, no pet.) (mem. op.) (stating that a party must present argument to the trial court or the argument is waived and cannot be considered for the first time on appeal).

Regarding waiver of the 9 U.S.C. § 1 exemption, the Dallas Court of Appeals has summarized the applicable law in this area:

> Texas courts have held that an objection to arbitration under the 9 U.S.C. § 1 exemption from arbitration must be raised before the trial court rules on a motion to compel arbitration. *See Conn Appliances, Inc. v. Puente*, No. 09-18-00326-CV, 2020 WL 4680283, at *4 (Tex. App.—Beaumont 2020, no pet.) (mem. op.) (failure to object to arbitration procedure on the ground that 9 U.S.C. § 1 exemption applied before the trial court rules on motion to compel arbitration waived the objection); *J.B. Hunt Transp., Inc. v. Hartman*, 307 S.W.3d 804, 809 (Tex. App.—San Antonio 2010, no pet.) (on appeal from denial of motion to compel arbitration, court of appeals refused to consider whether 9 U.S.C. § 1 exempted the dispute from arbitration when the appellee did not assert the application of the exemption in the trial court).

*Gordon v. Trucking Res. Inc.*, No. 05-21-00746-CV, 2022 WL 16945913, at *2 (Tex. App.—Dallas Nov. 15, 2022, no pet.) (mem. op.). In determining whether an employee is a transportation worker for purposes of the 9 U.S.C. § 1 exclusion, appellate courts review affidavit and live testimony as well as other evidence presented to the trial court. *See OEP Holdings, LLC v. Akhondi*, 570 S.W.3d 774, 778 (Tex. App.—El Paso 2018, pet. denied) ("Differentiating transportation workers from those who only incidentally aid in the transport of goods is a fact intensive inquiry.").

In this case, Lester first asserted the 9 U.S.C. § 1 exemption from arbitration in her appellate brief. Before the trial court, other than attaching a letter from the Plan's administrator to her response to the motion to compel arbitration, Lester offered no

16

evidence and made no argument regarding any matter other than scope. Because she failed to timely assert the transportation-worker exemption to the trial court, we cannot rely on that ground to affirm the trial court's ruling.[6]  *See* Tex. R. App. P. 33.1(a); *J.B. Hunt*, 307 S.W.3d at 809 ("The issue of whether section 1 of the FAA exempts Mr. Pilat from coverage was never presented to the trial court. Therefore, we conclude this issue was not preserved for our review."); *see also Duarte v. Mayamax Rehab. Servs., L.L.P.*, 527 S.W.3d 249, 257–58 (Tex. App.—El Paso 2016, pet. denied) (holding that because appellants failed to timely raise the argument regarding whether arbitrator or trial court determines the validity of any arbitration agreement contained in a challenged contract, appellants waived error on this argument).

Regarding the attorney's signature on the arbitration agreement, under state law, an arbitration agreement is generally enforceable, but if it governs a personal injury claim, the agreement must be approved and signed by both parties and their attorneys.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.002(b)(3); *see also APC Home*

---

[6]In its reply brief, J.B. Hunt argues that, even if not waived, the transportation-worker exemption does not apply in this case because the exemption applies only to "contracts of employment" and this was "an ERISA employee benefit plan that provides for certain non-fringe disability, death, dismemberment, and health care benefits." *See* 9 U.S.C. § 1; *see also In re Mission Petroleum Carriers, Inc.*, No. 13-04-00550-CV, 2005 WL 326848, at *2 (Tex. App.—Corpus Christi–Edinburg, Feb. 11, 2005, orig. proceeding) (mem. op.) (stating that the transportation-worker exemption did not apply because "the arbitration clause at issue [was] found in the Mission employee health and safety plan, rather than an employment contract"). Because we conclude that this issue was not raised before the trial court, we need not address this alternative argument.

17

*Health Servs., Inc.*, 600 S.W.3d at 391; *Chambers v. O'Quinn*, 305 S.W.3d 141, 147 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). Once again, this issue was not raised before the trial court. Therefore, we cannot now consider it on appeal.[7] *See* Tex. R. App. P. 33.1(a).

Also on appeal, Lester alludes to other vague "contract formation" arguments and "additional bar[s]" to arbitration. She argues, without support, that "no valid arbitration contract was ever formed" between J.B. Hunt and Lester. However, again, she never raised these arguments in the trial court. Instead, her written response to the motion was limited to the "course and scope" issue, and her attorney's argument before the trial court began with the admission that "there's an arbitration agreement. And the arbitration clause defines whether or not that arbitration agreement is going

---

[7]In its reply brief, J.B. Hunt argues that the dual signature argument is meritless because the FAA, not the TAA, applies in this situation. J.B. Hunt avoids the Texas statute if the FAA—9 U.S.C. §§ 1–16—applies, because the FAA preempts conflicting state law. *APC Home Health Servcs., Inc.*, 600 S.W.3d at 391. Here, the Plan specifically provided that the FAA would control: "The Federal Arbitration Act shall govern the interpretation, enforcement, and proceedings under the arbitration provisions of this Plan." *See Perry v. Thomas*, 482 U.S. 483, 489, 107 S. Ct. 2520, 2525 (1987) (stating that the FAA applies when the dispute concerns a "contract evidencing interstate commerce"). While the arbitrator could apply the substantive law of Texas, the arbitrator specifically could not apply the "Texas General Arbitration Act." Where the FAA applies, the signature of counsel is not a prerequisite to enforcement of an arbitration agreement. *See In re Nexion Health at Humble, Inc.*, 173 S.W.3d 67, 70 (Tex. 2005) (orig. proceeding) ("Because the TAA is preempted by the FAA in this case, the signature of Marjorie's counsel was not a prerequisite to enforcement of the arbitration agreement."). However, as in the transportation-worker-exemption argument, we need not address this alternative argument because it was not raised before the trial court.

18

to apply." J.B. Hunt's counsel echoed this understanding as he began his argument to the trial court: "The court is correct, there is an arbitration agreement. And Ms. Lester does not contest that there's an arbitration agreement. The issue before the court today is what can this court do with respect to determining if the claim falls within the arbitration?" Because she failed to present these arguments to the trial court, Lester cannot now raise these new arguments on appeal. *See* Tex. R. App. P. 33.1(a).

In summary, J.B. Hunt satisfied its two-pronged burden to establish both the existence of a valid arbitration agreement and that the disputed claims fell within the scope of that agreement. *See Wagner*, 627 S.W.3d at 284. Lester failed to timely raise a valid defense to the agreement's enforcement. *See J.M. Davidson, Inc.*, 128 S.W.3d at 227–28. Therefore, the trial court abused its discretion in denying J.B. Hunt's motion to compel arbitration. We sustain J.B. Hunt's sole issue.

## IV. CONCLUSION

Having sustained J.B. Hunt's sole issue, we reverse and remand for entry of an order compelling arbitration and staying the proceedings in the trial court pending completion of the arbitration proceedings. *See Mid-Am. Apts., L.P. v. Trojan*, No. 02-21-00204-CV, 2021 WL 5028794, at *7 (Tex. App.—Fort Worth Oct. 28, 2021, no pet.) (mem. op.).

/s/ Dana Womack

Dana Womack
Justice

Delivered:  June 8, 2023